858 F.2d 525
 23 Soc.Sec.Rep.Ser. 295, Unempl.Ins.Rep. CCH 14191A
Barbara HOOKER; Estate of Laurence Hooker; Daniel Hooker;
William D. Hooker, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
United States of America; Edward Siacunco; R.
Girard; Eugene Erman, Defendants-Appellees.
 No. 86-5721.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 2, 1988.
Decided Sept. 29, 1988.
 
 Dan Stormer, Litt & Stormer, Los Angeles, Cal., for plaintiffs-appellants.
 Roger E. West, Asst. U.S. Atty., Asst. Chief, Civ. Div., Los Angeles, Cal., for federal defendants-appellees.
 Michael B. Hughes, Deputy Atty. Gen., State of Cal., Los Angeles, Cal., for state defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, Chief Judge, HALL, Circuit Judge, and SCHNACKE, District Judge.*
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Barbara Hooker and her two sons appeal from the district court's order dismissing their claims based upon the Social Security Administration's allegedly wrongful termination of disability benefits to Laurence Hooker ("Hooker"), plaintiffs' husband and father, respectively. Plaintiffs allege that Hooker committed suicide as a proximate result of the termination.
 
 
 2
 Plaintiffs maintain two sets of claims against three sets of defendants: (1) state law tort claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sec. 1346(b); (2) pendent state law tort claims against two state defendants; and (3) a federal due process claim against a federal defendant and the two state defendants.[1]
 
 
 3
 * Hooker began receiving disability benefits under Title II of the Social Security Act (the "Act") in May 1977, retroactive to December 1975, the date Hooker became unable to work due to mental and emotional problems.
 
 
 4
 In 1980, Congress passed legislation to tighten review of Title II benefits by the Social Security Administration ("SSA"). Social Security Disability Amendments of 1980, Pub.L. No. 96-265 Sec. 311(a), 94 Stat. 460 (codified as amended at 42 U.S.C. Sec. 421(i) (1982 & Supp. III 1985)). The new law required that SSA or an appropriate state agency review "for purposes of continuing eligibility" every beneficiary's file once every three years. 42 U.S.C. Sec. 421(i)(1). In preparation to meet these new statutory requirements, SSA initiated the 1980-81 Continuing Investigation Redesign Study ("CDI"), a program to determine the level of continuing eligibility of those persons then receiving benefits. Under CDI, Hooker's case was selected for review at random, along with 25,000 others throughout the United States, to determine continuing eligibility for disability benefits.
 
 
 5
 On September 25, 1980, state defendant Edward Siacunco, a Disability Evaluation Analyst for the California Department of Social Services ("California DSS"), notified Hooker that his disability status was being reevaluated by California DSS pursuant to the state's agreement with SSA. California DSS acted under guidelines for disability determinations set out in the "Program Operations Manual System" ("POMS") published by SSA. The identical criteria are listed in 20 C.F.R. Part 404, subpt. P, app. 1 (1988).
 
 
 6
 In response to the enclosed questionnaire, Hooker listed Don de Francisco and Reed Boswell as his treating physicians. Dr. de Francisco was Hooker's psychiatrist for one year prior to the reevaluation of Hooker's disability, and Dr. Boswell was Hooker's psychiatrist at the time Hooker was initially determined to be disabled from working. Dr. de Francisco submitted a medical report to Siacunco that diagnosed Hooker as a paranoid schizophrenic. Because of the conclusory nature of that report, however, California DSS ordered a consultative examination by Dr. Chiong, a psychiatrist selected by California DSS, who diagnosed Hooker as having only a paranoid personality disorder. Dr. Chiong reported that although "at present [Hooker] was disabled from working," he could be rehabilitated to perform certain jobs involving minimal contact with people, such as gardening.
 
 
 7
 On December 1, 1980, Siacunco notified Hooker that pursuant to SSA's request for redetermination of his eligibility, the evidence in the state's file indicated that he had been able to perform substantial gainful work since November 1980 and was no longer entitled to benefits. Siacunco concluded that "with continued appropriate medication you can do jobs which are simple and non-stressful." The letter invited submission of further information for reconsideration by California DSS of its preliminary determination of ineligibility, and stated that Hooker would be notified of the final decision by SSA. Subsequently, Barbara Hooker and Dr. de Francisco submitted letters detailing Hooker's personality disorders, work habits, and suicide attempts. While Dr. de Francisco stated that Hooker's paranoid schizophrenia was of extreme severity and long duration, he concluded that if certain specific work conditions were met, he would agree with California DSS's determination that Hooker was able to work. Dr. de Francisco doubted, however, whether a job involving "simple" and "non-stressful" work could be found to suit Hooker's particular impairment.
 
 
 8
 On December 26, 1980, California DSS sent to SSA a cessation of benefits letter signed by Siacunco. California DSS concluded that Hooker had a paranoid personality disorder but that his "current condition does not meet or equal listing[s] and is not of such severity to preclude simple work involving minimum contact with others." The letter listed various simple jobs, assertedly available within the regional economy, that Hooker was capable of undertaking. Relying on the reports of Drs. de Francisco and Chiong and the POMS, the letter concluded that Hooker's disability had ceased as of November 1980.
 
 
 9
 Hooker's file was subsequently transmitted to federal defendant Robert Girard's unit in Baltimore, Maryland for review of conformity with federal law. Girard was the Manager of Module 43, Branch 15 of SSA. The Office of Disability Programs, charged with evaluation of medical-based cessation determinations under CDI, reviewed the evidence relied upon by California DSS in its determination. Dr. Werner A. Kohlmeyer, Psychiatric Consultant for the Office of Disability Programs, concluded that Hooker's psychiatric condition was "moderately severe," and that his condition would impair his ability both to carry out instructions in a consistent manner and to work under normal job stress. Accordingly, on March 17, 1981, SSA submitted Hooker's file to California DSS for consideration of a continuance and for reconsideration based on SSA's finding that although Hooker did not meet the listings for impairment he still was unable to work in routine settings under "customary work pressures."
 
 
 10
 On March 31, 1981, Drs. Kleinman and Nemeth, psychiatrists employed by California DSS, reviewed Hooker's file. Dr. Kleinman noted that Hooker did not meet the listings for psychological impairment contained in the POMS. Both doctors referred to Dr. de Francisco's conclusion that Hooker could do simple, non-stressful work and Dr. Chiong's conclusion that Hooker could do work involving little contact with people. In addition, both Kleinman and Nemeth concluded that while Hooker was not prime employment material, the decision of the doctors who saw Hooker that he could work was "obviously judgmental." Accordingly, California DSS denied the continuance and returned Hooker's file to SSA in Baltimore without changing its decision to terminate Hooker's benefits.
 
 
 11
 Stanley Webber, a disability examiner for SSA, approved the cessation determination by California DSS, signing Girard's name on the same cessation letter that Siacunco had signed. The SSA sent a letter of acquiescence to California DSS. The letter concluded that based on SSA's "independent review of all the evidence in this case," Hooker was able to engage in "unskilled, non-stressful work at a [substantial gainful activity] level."According to Barbara Hooker's uncontroverted declaration, Hooker's benefits ceased without prior notice in early September 1981. She first learned of the cessation by calling Hooker's bank and she became aware of Hooker's right to appeal by calling California DSS. Later that September, Hooker received a letter from California DSS demanding that he repay $6,000 in benefits accrued since January 1981, when his benefits purportedly should have ceased.
 
 
 12
 On November 6, 1981, Hooker requested reconsideration of the decision to terminate the benefits and to charge him for benefits already paid. He submitted no further evidence. On December 18, 1981, Disability Examiner K. Rasmussen and state defendant Dr. Eugene Erman, a physician employed by California DSS, concluded that Siacunco's original determination should be "affirmed as written." Hooker was notified on January 23, 1982 of the denial of his request for reconsideration and of his right to appeal the Secretary's determination to an Administrative Law Judge ("ALJ") within sixty days. He was informed of the basis for the decision to terminate his benefits and the criteria for eligibility.
 
 
 13
 Subsequently, Hooker's mental state allegedly deteriorated and he hanged himself on April 17, 1982. After Hooker's death, Barbara Hooker obtained a waiver of the time limit for appealing the Secretary's decision to an ALJ. On appeal, the ALJ ruled that the Secretary had incorrectly terminated Hooker's benefits because Hooker had met the listings for impairment set out in the POMS. See 20 C.F.R. Sec. 404.1520(d) (1987). The ALJ also ruled that Hooker's disability continued until the date of his death.
 
 
 14
 This suit followed. The district court ruled that 42 U.S.C. Sec. 405(h) and 28 U.S.C. Sec. 2680(a) barred jurisdiction over plaintiffs' FTCA claim against the United States. The court refused to exercise pendent jurisdiction over plaintiffs' state law claim against the state defendants. The district court also held that official immunity barred plaintiffs' state law tort claim against the individual defendants. Finally, the court granted defendants' motion for summary judgment on the federal due process claim.
 
 
 15
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.[2]
 
 II
 
 16
 Plaintiffs bring a state law tort claim against the United States under the FTCA. Plaintiffs allege that:
 
 
 17
 the individual defendants, acting under and within the scope of their authority as employees of the United States, breached a duty of care owed to Hooker under California law by disregarding "uncontroverted medical evidence of the seriousness of Laurence Hooker's psychiatric condition and his inability to work" and failing to heed the specific warning by Dr. de Francisco of Hooker's likely deterioration if benefits were terminated.
 
 
 18
 Hooker v. United States Dep't of Health and Human Services, No. 83-8342, slip op. at 9 (C.D.Cal. Dec. 24, 1985).
 
 
 19
 The district court ruled: (1) 42 U.S.C. Sec. 405(h) barred plaintiffs' state law claim brought under the FTCA for negligent termination of disability benefits; (2) plaintiffs' state law tort claim against the state defendants was "merely a disguised dispute with the Secretary" and therefore was also barred by 42 U.S.C. Sec. 405(h); and (3) 28 U.S.C. Sec. 2680(a) barred actions based on the performance of a discretionary function. Whether 42 U.S.C. Sec. 405(h) or 28 U.S.C. Sec. 2680(a) divest the district court of jurisdiction are questions of law reviewed de novo. Chamberlin v. Isen, 779 F.2d 522, 523 (9th Cir.1985) (discretionary function exception). See generally United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 20
 * Plaintiffs contend that 42 U.S.C. Sec. 405(h) does not bar this suit from being brought in federal court. Section 405(h) provides:
 
 
 21
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.
 
 
 22
 (emphasis added). The district court ruled that its jurisdiction over plaintiffs' claim for negligence was barred as a claim "arising under" Title II of the Act.
 
 
 23
 The Supreme Court has read the third sentence of section 405(h) broadly. In Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 2464, 45 L.Ed.2d 522 (1975), the Court wrote that "arising under" included a claim in which "both the standing and the substantive basis for the presentation" of the claims is the Social Security Act. In that case, the Secretary denied benefits to a claimant pursuant to the requirements of the Social Security Act's duration-of-relationship eligibility statute for surviving wives and stepchildren of deceased wage earners. The claimant subsequently challenged the constitutionality of that statute. The Court ruled that the claimant's constitutional challenge was a claim "arising under" Title II of the Act. Id. The Court reached this conclusion while acknowledging that such a challenge was in one sense also a claim "arising under" the Constitution. Id. at 760, 95 S.Ct. at 2464. The Court reaffirmed this construction of section 405(h) in Heckler v. Ringer, 466 U.S. 602, 614-16, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984).
 
 
 24
 Our decision in Marin v. HEW, Health Care Financing, 769 F.2d 590 (1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986), is controlling. In that case, a health care provider brought suit to recover consequential damages allegedly caused by the Secretary's negligent failure to process its cost reports. We expressly rejected the same argument plaintiffs make here, that claims for damages caused by the Secretary's allegedly negligent acts do not "arise under" the Act. Id. at 592.
 
 
 25
 Addressing the applicability of section 405(h), we stated in Marin that "Congress envisioned just this type of claim and provided an administrative remedy for it." Id. Consequently, we applied the jurisdictional bar of section 405(h), opining that "[t]he substantive cause of action [the provider] presses is anticipated by the statute. His demand for greater damages than the statute provides would render meaningless the jurisdiction restriction of Sec. 405(h)." Id.
 
 
 26
 Here, we are presented with a similar case. Plaintiffs contend that SSA negligently evaluated the medical evidence before it and wrongly concluded that Hooker was no longer disabled. This claim seeks an adjudication by a federal court that Hooker was indeed disabled within the meaning of the Act. Congress envisioned "just this type of claim," however, in creating an administrative remedial scheme by which an aggrieved person may contest the termination of benefits. See id.
 
 
 27
 If a recipient disagrees with SSA's decision to terminate his benefits, the recipient has the right to de novo reconsideration by the appropriate state agency. 20 C.F.R. Sec. 416.1413 (1988). If, after reconsideration by the state agency and SSA review, the decision remains adverse to the recipient, he is notified of his right to an evidentiary hearing before an ALJ. Id. Sec. 416.1422 (1988). If the ALJ finds in favor of the Secretary, the recipient may request discretionary review by the SSA Appeals Council, id. Sec. 416.1455 (1988), and finally may obtain judicial review pursuant to 42 U.S.C. Sec. 405(g). 20 C.F.R. Sec. 416.1481 (1988).[3]
 
 
 28
 As we stated in Marin, allowing lawsuits under the FTCA "for greater damages than the statute provides would render meaningless the jurisdiction restriction of Sec. 405(h)." 769 F.2d at 592. Because our prior decision in Marin is controlling, we hold that section 405(h) bars plaintiffs' state law claim under the FTCA.[4]
 
 B
 
 29
 The district court also ruled that plaintiffs' state law tort claim against the state defendants was "merely a disguised dispute with the Secretary" and therefore was also barred by 42 U.S.C. Sec. 405(h). We agree. See Ellis v. Blum, 643 F.2d 68, 76 (2d Cir.1981).[5]
 
 C
 
 30
 The district court held that the discretionary function exception to the FTCA, 28 U.S.C. Sec. 2680(a),[6] barred plaintiffs' state law claim against the United States. Because we hold that section 405(h) precludes jurisdiction over plaintiffs' state law claim, we do not address the applicability of the discretionary function exception.
 
 III
 
 31
 The Supreme Court's recent decision in Schweiker v. Chilicky, --- U.S. ----, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), held that a federal due process action may not be brought for the wrongful termination of Social Security disability benefits. The Supreme Court ruled that the Act's remedial scheme precluded a Bivens remedy for an alleged constitutional tort.[7]
 
 
 32
 In Chilicky, several individuals whose disability benefits were terminated filed suit alleging, in part, that certain state and federal officials intentionally disregarded favorable dispositive evidence in terminating their benefits. Id. 108 S.Ct. at 2465. Plaintiffs here, relying on our decision in Chilicky that was reversed by the Supreme Court, Chilicky v. Schweiker, 796 F.2d 1131 (9th Cir.1986), frame their federal due process claim in identical terms.
 
 
 33
 In light of the Supreme Court's decision in Chilicky, the district court incorrectly exercised jurisdiction over plaintiffs' federal due process claim. Although the district court granted summary judgment to the defendants on this issue, it had no jurisdiction to entertain this claim.
 
 IV
 
 34
 Plaintiffs contend that the district court erred in holding that official immunity barred plaintiffs' state law claim against federal defendant Girard. We do not reach this issue.
 
 
 35
 It appears from the face of the complaint that the only jurisdictional basis for the state law claim against Girard is the FTCA, 28 U.S.C. Sec. 1346(b). Under the FTCA, district courts may consider claims against the United States; however, "[n]o jurisdiction as to individual defendants is granted." Davis v. United States, 667 F.2d 822, 825 (9th Cir.1982). Because the complaint failed to state an independent jurisdictional ground as to Girard,[8] the district court should have dismissed the state law tort claim against Girard rather than consider whether absolute immunity barred the cause of action. See id.; Wright v. United States, 719 F.2d 1032, 1034 (9th Cir.1983).
 
 V
 
 36
 We vacate that part of the district court's order granting summary judgment on appellants' federal due process claim. We also vacate that part of the court's order finding that official immunity barred plaintiffs' state law claim against federal defendant Girard. We remand on both issues with instructions to dismiss the claims for lack of subject matter jurisdiction. See Demarest v. United States, 718 F.2d 964, 965 (9th Cir.1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984); Capitol Industries-EMI, Inc. v. Bennett, 681 F.2d 1107, 1118 (9th Cir.), cert. denied, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982). The remainder of the district court's order is affirmed.
 
 
 37
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 *
 Honorable Robert H. Schnacke, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Plaintiffs do not appeal the district court's dismissal of the Department of Health and Human Services and do not contest the district court's ruling "that the United States is not liable for constitutional torts under the FTCA and has not otherwise waived its sovereign immunity for such torts." Hooker v. United States Dep't of Health and Human Services, No. 83-8342, slip op. at 8-9 (C.D.Cal. Dec. 24, 1985)
 
 
 [2]
 Although he does not vigorously argue the issues, federal defendant Girard contends that the district court improperly exercised personal jurisdiction over him and that venue in the Central District of California was improper. A district court's determination that personal jurisdiction can properly be exercised is a question of law reviewable de novo when the underlying facts are undisputed. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986). Similarly, the determination of where the claim arose for purposes of 28 U.S.C. Sec. 1391(b) on the basis of undisputed facts is a question of law reviewable de novo. Central Valley Typographical Union, No. 46 v. McClatchy Newspapers, 762 F.2d 741, 745 (9th Cir.1985)
 The district court properly applied the "effects test" in determining it had personal jurisdiction over Girard and correctly determined that the exercise of jurisdiction was not otherwise unreasonable. Girard's claim that 28 U.S.C. Sec. 1391(e) does not support venue in the Central District is also without merit. As the district court's order makes clear, plaintiffs rely upon 28 U.S.C. Sec. 1391(b), providing venue for non-diversity suits where "the claim arose."
 
 
 [3]
 Section 405(g) provides that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States...."
 
 
 [4]
 We note that the First Circuit's opinion in Jimenez-Nieves v. United States, 682 F.2d 1 (1st Cir.1982), is to the contrary
 
 
 [5]
 Because we hold that 42 U.S.C. Sec. 405(h) bars plaintiffs' FTCA claim, we do not reach several questions. First, are the state defendants "employees of the Government" for purposes of the FTCA such that their acts subject the United States to suit under the FTCA? See Brown v. United States, 573 F.Supp. 740 (M.D.Ala.1982); Hill v. Schweiker, 532 F.Supp. 1014 (D.N.H.1982). Second, are the state defendants entitled to official immunity for their acts?
 
 
 [6]
 Section 2680(a) provides that the FTCA shall not apply to "[a]ny claim based ... upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of ... an employee of the Government, whether or not the discretion involved be abused."
 
 
 [7]
 Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [8]
 Plaintiffs' other asserted grounds of jurisdiction, 28 U.S.C. Sec. 1343(3) and (4), 28 U.S.C. Sec. 1331, and 42 U.S.C. Sec. 1983, go to the federal due process claim