Phillip D. SORENSON, et al., Plaintiffs,

v.

Kevin CONCANNON, Director of the Department of Health and Human Services; et al., Defendants.

Civ. No. 94–874–JO.

United States District Court, D. Oregon.

Nov. 17, 1994.

Steven D. Koch, Lorey H. Freeman, Multnomah County Legal Aid Service, Portland, OR, Timothy P. Baxter, Stephen C. Kanaga, Lane County Legal Aid, Inc., Eugene, OR, Kent B. Thurber, Oregon Legal Services Corp. Farm Workers Program, Hillsboro, OR, Susan Hogg, Newport, OR, for plaintiffs.

Gregory A. Chaimov, Stephen K. Bushong, Dept. of Justice, Salem, OR, Lori Hyman, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Kristine Olson Rogers, U.S. Atty., Jack G. Collins, Asst. U.S. Atty., Portland, OR, for defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This action involves a challenge to the manner in which disability determinations are made for the purposes of the disability benefit programs set forth in Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* Plaintiffs are "destitute, disabled individuals" who allegedly suffer from delays or denials of disability benefits under the Social Security Act (SSA). Am.Compl. ¶ 1. Plaintiffs are suing Federal and State Defendants who administer the SSA for civil rights violations, under 42 U.S.C. § 1983.[1] This matter comes before this Court on Plaintiffs' Motion for Class Certification (# 7–1) and the State's Motion

---

1. Except as otherwise designated, "State Defendants" shall be referred to as "State," "Federal Defendant" shall be referred to as "Secretary," and both "Federal and State Defendants" shall be referred to as "Defendants."

to Dismiss Plaintiffs' Complaint (# 26–1). Plaintiffs' Motion for Class Certification is GRANTED and the State's Motion to Dismiss Plaintiffs' Complaint is DENIED.

## SUMMARY OF ALLEGATIONS

Plaintiffs claim that Defendants have violated Plaintiffs' rights under the Social Security Act and its implementing regulations and guidelines. In sum, they allege the following:

(1) State Defendant Horsley, Administrator of Disability Determination Services (DDS), makes eligibility determinations for social security benefits on behalf of the Social Security Administration (SSA), Am. Compl. ¶ 2;

(2) These determinations are supervised by State Defendants Southwell and Concannon, *Id.*; [2]

(3) State Defendants fail to comply with federal guidelines and engage in a pattern of procedural practices in which they deny requests for disability benefits "on the basis of inadequate development and evaluation of evidence of disability * * *," *Id.*;

(4) Federal Defendant, Donna Shalala, supervises the SSA and has "acquiesced in the state defendants' deficient performance * * *." *Id.* ¶ 3;

(5) Defendants' practices deny and delay the awarding of disability benefits to eligible disabled persons. *Id.* ¶ 4.

In addition, Plaintiffs allege several specific incidents to support their claim that Defendants have engaged in a pattern of unfairly denying disability benefits to eligible disabled persons. *Id.* ¶¶ 67–217.

Finally, Plaintiffs request that the Court grant the following relief:

(1) certify the cause as a class action;

(2) enter a declaratory judgment holding that Defendants' disability determinations violate Plaintiffs' rights under the SSA;

(3) grant permanent injunctive relief to enjoin Defendants from perpetuating current practices, to require Defendants to develop new procedure, and to give notice to all class members that denial of their benefits may have been unlawful; and,

(4) grant plaintiffs their reasonable costs and attorney fees from State Defendants pursuant to 28 U.S.C. § 1988, and from federal defendant pursuant to 28 U.S.C. § 2412.

In the alternative, Plaintiffs request a writ of mandamus, with reasonable attorneys' fees pursuant to 28 U.S.C. 2412, directing Defendants to adopt lawful policies and procedures in accordance with the SSA and its implementing regulations and guidelines.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I. Plaintiffs' Arguments In Support

Pursuant to FRCP 23, Plaintiffs seek to represent and request an order certifying the following class:

All Oregon residents whose claims for disability benefits under the Supplemental Security Income or Social Security Disability programs have been or will be denied, or which have not been or will not be decided fully favorably, but which have not lapsed administratively or judicially. The class excludes persons who have successfully appealed the denial of their disability benefits, or persons who are not eligible for benefits for reasons unrelated to disability.

Am.Compl. ¶ 23. Plaintiffs argue that all requirements in FRCP 23(a) and 23(b)(2) have been met.[3]

---

**2.** Plaintiff also names Ms. Southwell, Administrator of the Vocational Rehabilitation Division (VRD), and Mr. Concannon, Director of the Department of Human Resources (DHR), as Defendants. DDS is contained within VRD which is contained in DHR. Therefore, Ms. Southwell and Mr. Concannon are both responsible for supervising all activities within DDS.

**3.** FRCP 23(a) reads: "Prerequisites to a Class Action. One or more members of a class may

sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class."

## A. Numerosity

Plaintiffs admit that the exact number of members of the class is unknown. Pls.' Mem. Supp. Mot. Class Cert. at 3–4. However, Plaintiffs argue that "the members of the class number in the many hundreds, if not thousands." Furthermore, members of the class are spread throughout the State and include unnamed and unknown future persons. *Id.* at 4–6. Therefore, joinder is impracticable and the numerosity requirement is met. *Id.* at 6.

## B. Common questions of law or fact

Plaintiffs argue that the class has common questions of both law and fact: (1) the common question of fact is whether Defendants routinely fail to adequately consider all available evidence regarding plaintiffs' impairments; and (2) the common question of law is whether, by such failures, Defendants have violated the SSA and its implementing regulations. *Id.* at 6–7. Therefore, plaintiffs contend that the "court can resolve the common issues of law and fact in this case efficiently and economically in one action." *Id.* at 8.

## C. Typicality

Plaintiffs assert that all class members were subject to the same disability determination policies and procedures of the DDS which violated the SSA and implementing regulations. *Id.* at 9. Therefore, class members' claims are typical and will be benefitted in the same way by the requested declaratory and injunctive relief. *Id.* at 9–10.

## D. Fair and adequate representation of interests

Plaintiffs contend that their interests are not in conflict with the class members because both the named plaintiffs and the class members have a common interest in ensuring that disability claims are performed correctly and in compliance with federal law. *Id.* at 11. Furthermore, the members' interests are adequately protected because the class is represented by two legal services and a pri-

vate law firm, each of which is substantially experienced in public assistance litigation. *Id.*

## E. FRCP 23(b)(2)

Plaintiffs argue that this action satisfies FRCP 23(b)(2) because Defendants' statewide policy and practices affect all class members. *Id.* at 12. Furthermore, Plaintiffs request injunctive and declaratory relief for the class, in accordance with FRCP 23(b)(2). *Id.* Plaintiffs conclude that class certification is necessary for proper judicial review of Defendants' SSA violations, before such violations become moot with respect to individual Plaintiffs. *Id.* at 13.

## II. The State's Opposition

The State argues that Plaintiffs do not sufficiently define Defendants' "uniform pattern of procedural practices" which violate the SSA. State Defs.' Mem. Opp. Mot. Class Cert. at 1–2. Therefore, it is impossible to designate a class of persons who suffer from Defendants' practices. *Id.* at 2. Consequently, the State requests that class certification be postponed until after initial discovery when Plaintiffs can "identify the specific forms, procedures or practices that they wish to challenge." *Id.* at 3.

## III. The Secretary's Opposition

The Secretary argues that this case is not an appropriate action for class certification because every disability determination is an "individualized" case-by-case judgment call. Fed. Defs.' Mem. Opp. Mot. Class Cert. at 2. Furthermore, Plaintiffs seek review of the application of the Secretary's policies and procedures by State agency personnel, rather than review of the policies and procedures themselves. *Id.* at 3. Therefore, Plaintiffs should seek relief individually through the administrative appeals process where errors of judgment may be remedied through *de novo* review, rather than proceeding directly

---

FRCP 23(b)(2) adds: "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: * * * (2) the party opposing the class has acted

or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *."

to court. *Id.* at 3.[4] Consequently, the Secretary concludes that Plaintiffs must exhaust their administrative remedies and receive a final agency decision before seeking judicial review. *Id.* at 4.

In addition, the Secretary argues that Plaintiffs have neither satisfied the commonality and typicality requirements of FRCP 23(a)(2) and (3), nor shown that the case falls under FRCP 23(b)(2). *Id.* at 14.

First, the class members' claims are not typical and do not involve common questions of law or fact, but rather require "case-by-case determinations" because Plaintiffs seek review of DDS's application of the law to case-specific facts, to determine whether the law was applied correctly. *Id.* at 15. Therefore, the Court will have to inquire into individual cases to decide whether DDS violated the SSA. *Id.* at 15–17. "This burden is wholly inconsistent * * * with efficiency and economy of litigation." *Id.* at 16.

Second, the Secretary further argues that Plaintiffs cannot fulfill FRCP 23(b)(2) by conclusorily stating that DDS's practices and procedures apply both statewide and equally to all class members. Because Plaintiffs' claims involve individual instances of disability determinations, their challenge is not " 'premised on a ground that is applicable to the entire class,' " as required by FRCP 23(b)(2). *Id.* at 19–20 (quoting *Jones v. Diamond,* 519 F.2d 1090, 1100 (5th Cir.1975)).

Finally, the Secretary argues that class action certification is inappropriate because this Court lacks jurisdiction over Plaintiffs' claims; most, if not all, class members have not received a "final decision" of the Secretary prior to seeking judicial review. Therefore, the class has failed to exhaust administrative remedies. *Id.* at 20–21 (citing 42 U.S.C. § 405(g)).[5] Consequently, this Court may not entertain Plaintiffs' claims.

In the alternative, the Secretary argues that the definition of the class should be modified in the following ways:

(1) the class should only include persons who were denied disability benefits by *Oregon DDS,* rather than all Oregon residents whose claims were filed and denied elsewhere;

(2) the class definition should have an opening and closing date,[6] otherwise, it may be too difficult for DDS to provide relief;

(3) the class cannot include all persons who were denied benefits, but rather should include only those persons who were denied benefits and seek relief on similar grounds; and,

(4) the class should only include persons who exhausted their administrative remedies.

Therefore, the Court should deny class certification until Plaintiffs comply with the foregoing limitations.

For the reasons discussed above, the Secretary seeks to prevent class certification, or in the alternative, modify the structure of the class before certification is granted.

## IV. Plaintiffs' Reply To Defendants' Opposition

Plaintiffs argue that Defendants have mischaracterized their single unified claim: "that against all putative class members, De-

---

4. Defendant describes the levels of available review of the initial disability determination by DDS: "[claimant] is afforded a three-stage administrative review process beginning with a *de novo* reconsideration by the DDS of the initial determination." *Id.* at 11. These stages are the following: (1) *de novo* reconsideration by DDS, (2) *de novo* hearing before an Administrative law Judge, (3) *de novo* review by the Appeals Council of the SSA, and (4) judicial review in federal district court. *Id.*

5. "Title 42 U.S.C. § 405(g) specifies the following requirements for judicial review: (1) a final decision by the Secretary made after a hearing; (2) commencement of a civil action within 60

days after the mailing of notice of such decision; and (3) filing of the action in an appropriate district court." *Schoolcraft v. Sullivan,* 971 F.2d 81 (8th Cir.1992) (citing *Weinberger v. Salfi,* 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975)), *cert. den.,* — U.S. —, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994) (discussed *infra* note 10).

6. For instance, "no earlier than 60 days prior to filing of the class action complaint in this case." Defendant argues that an enormous class would "create serious problems for Oregon DDS if a remedial order requiring the reprocessing of claims were entered." *Id.* at 25.

fendants have applied one systematic policy of failing adequately to develop and fairly consider [sic] evidence of impairment." Pls.' Reply at 2. Therefore, Plaintiffs request judicial review of a "pervasive system and policy of illegally denying disability applications." *Id.* at 7.

In addition, Plaintiffs contend that they need not exhaust administrative remedies because their challenge to DDS procedures deserves judicial waiver of the exhaustion requirement, according to *Johnson v. Shalala*, 2 F.3d 918 (9th Cir.1993) (judicial waiver appropriate where class shows collaterality, irreparability, and futility). *Id.* at 14–19. In support of waiver, Plaintiffs explain that (1) their action is *collateral* to a claim for benefits because they seek injunctive and declaratory relief, (2) exhaustion would cause *irreparable injury* because applicants awaiting administrative review suffer severe hardship, and (3) individual challenges to change the system would be *futile* because individual claims, by themselves, cannot prove an illegal system-wide policy. *Id.*

Finally, Plaintiffs admit that the class definition should be modified in the following respects: (1) the definition should include only those benefits applications *denied by Oregon DDS;* and (2) the phrase "or which have not been or will not be decided fully favorably" should be removed from the definition.[7] However, Plaintiff rejects Defendants' other proposed modifications.

7. With these modifications, the class definition is the following:

All Oregon residents whose claims for disability benefits under the SSD programs have been or will be denied by the Oregon DDS but which have not lapsed administratively or judicially. The class excludes persons who have successfully appealed the denials of their disability benefits, or persons who are not eligible for benefits for reasons unrelated to disability.

8. The Supreme Court states, "the 'final decision' requirement embodied in [§ 405(g)] 'consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be waived by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have

## V. Discussion

Essentially, as set forth above, Defendants raise three arguments in opposition to class certification. First, Defendants insist that this Court lacks jurisdiction to hear Plaintiffs' case for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 405(g). Secondly, the Secretary claims that Plaintiffs do not satisfy FRCP 23 requirements for class certification. Third, the Secretary contends that Plaintiffs have not properly defined the class, thus the class definition should be modified. I address each argument in turn.

### A. Jurisdiction/Exhaustion Of Administrative Remedies

Generally, in order for this Court to exercise subject matter jurisdiction over a claim for social security benefits under 42 U.S.C. § 405(g), plaintiffs must (1) present the claim to the Secretary and (2) exhaust the administrative remedies prescribed by the Secretary. *Weinberger v. Salfi*, 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975).[8] However, exhaustion of administrative remedies under 42 U.S.C. § 405(g) may be waived provided that plaintiffs demonstrate the following: (1) their claims to the district court are collateral to their claims for benefits; (2) irreparable injury will follow; and (3) exhaustion would be futile. *Bowen v. City of New York*, 476 U.S. 467, 482–83, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986); *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir.1993).[9]

been presented to the Secretary.'" *Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)).

9. In *Johnson,* plaintiff initiated a class action to challenge the Secretary's policy of treating in-kind loans as income after he was denied a portion of benefits due to receipt of an in-kind loan. *Id.* at 920. The District Court ruled in plaintiff's favor and the Secretary appealed. *Id.* On appeal, the Secretary argued that the lower court erred by including persons who failed to exhaust their administrative remedies into the class. *Id.* The Ninth Circuit applied the *City of New York* requirements and held that the District Court properly waived the exhaustion requirement. *Id.* at 921–23. However, the Court of Appeals reversed the lower court by holding that

In this case, all putative class members presented their claims to the Secretary because they applied for, and were denied benefits at the initial administrative level. However, they have not exhausted all the available administrative remedies prior to seeking review in this Court. Consequently, the class members must demonstrate, according to the *City of New York* factors, that waiver of the requirement for exhaustion of remedies is appropriate.

■ Though the Secretary challenges this Court's subject matter jurisdiction in her opposition to class certification, this court shall construe that challenge as an FRCP 12(b)(1) Motion to Dismiss for Lack of Jurisdiction. "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993) (court denied defendant's 12(b)(1) motion to dismiss because plaintiffs adequately alleged the *City of New York* factors for waiver of exhaustion).

### 1. Collaterality

■ "A plaintiff's claim is collateral if it is not essentially a claim for benefits." *Johnson,* 2 F.3d at 921. Accordingly, in this case, Plaintiffs state that the relief requested is not an award of benefits for any class member, but rather is for declaratory and injunctive relief that would require DDS to follow proper policy and procedure under the Secretary's regulations for disability determinations. Pls.' Am.Compl. ¶ 1. Therefore, Plaintiffs have sufficiently pleaded a collateral claim.

### 2. Irreparability

■ Plaintiffs must raise a "colorable claim" that exhaustion will cause them irreparable injury: "'a "colorable" showing of irreparable injury is one that is not "wholly insubstantial, immaterial, or frivolous."'" *Johnson* at 922 (quoting *Briggs v. Sullivan,* 886 F.2d 1132, 1140 (9th Cir.1989). "[E]conomic hardship suffered by plaintiffs while

awaiting administrative review constitutes irreparable harm." *Johnson* at 922.

■ In this case, Plaintiffs specifically aver that irreparable economic hardship is caused by both Defendants' illegal policies and the delay from the exhaustion requirement. Pls. Am. Compl. ¶¶ 84, 121, 136, 154, 165, 211, 215. Therefore, Plaintiffs have sufficiently alleged that they will suffer irreparable hardship while awaiting administrative review.

### 3. Futility

■ The factor of futility is based upon whether the underlying purposes of requiring administrative exhaustion, as discussed in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), would be served by requiring exhaustion. The Court wrote that exhaustion is required in order that "the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its expertise, and to compile a record which is adequate for judicial review." *Id.* at 765. Exhaustion may be futile and inconsistent with these policies where Plaintiffs challenge systemic flaws in the procedure and policies of the process at the initial and reconsideration stages. *Johnson* at 922–23; *Schoolcraft v. Sullivan,* 971 F.2d 81, 87 (8th Cir.1992), *cert. den.,* — U.S. —, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994) (discussed *infra* note 10). Unlike mistakes in the application of procedures, which can be corrected within the administrative appeals system, challenges to the DDS disability determination procedures themselves cannot be redressed by exhausting administrative channels. *See, e.g., Johnson* at 922–23. Consequently, Plaintiffs' claims for declaratory and injunctive relief to require Defendants to employ proper procedures for disability evaluation cannot be redressed by administrative review.

According to the three-part *City of New York* test, I conclude that Plaintiffs' complaint alleges sufficient facts to merit judicial waiver of the exhaustion requirement of 42

the class could not include persons who allowed their claims to lapse. *Id.* at 924.

U.S.C. § 405(g), and thus confer subject matter jurisdiction on this Court.[10]

## B. FRCP 23 [11]

According to Plaintiffs' recent modifications in Plaintiffs' Reply dated October 24, 1994, they propose certification of the following class:

> All Oregon residents whose claims for disability benefits under the SSD programs have been or will be denied by the Oregon DDS but which have not lapsed administratively or judicially. The class excludes persons who have successfully appealed the denials of their disability benefits, or persons who are not eligible for benefits for reasons unrelated to disability.

Pls.' Reply at 25.

Federal Rule of Civil Procedure 23(a) sets forth four requirements for members of a class to sue as representative parties on behalf of the class:

> (1) **[Numerosity]** the class is so numerous that joinder of all members is impracticable, (2) **[Commonality]** there are questions of law or fact common to the class, (3) **[Typicality]** the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) **[Adequacy of Representation]** the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(2) adds a further criteria:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: * * * (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *.

Because the parties do not dispute numerosity and adequacy of representation, I find that Plaintiffs satisfy those two requisites.[12] However, Defendants challenge the commonality, typicality, and FRCP 23(b)(2) criteria. Therefore, I address those requirements in more detail.

---

10. In arriving at this decision, I find *Schoolcraft v. Sullivan* very persuasive and similar to the present action. 971 F.2d 81 (8th Cir.1992), *cert. den.*, —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994). In that case, "[p]laintiffs challenged the procedures and standards applied by [Minnesota's Disability Determination Services] to disability claims involving chronic alcoholism or some other drug dependency." *Id.* at 83. Plaintiffs sought to require defendants to apply procedures in the disability determination which conform to federal regulations. *Id.* at 84. However, the district court dismissed the complaint for lack of subject matter jurisdiction because plaintiffs failed to exhaust their administrative remedies. *Id.* at 83. The Eighth Circuit vacated the lower court's decision and waived the 42 U.S.C. § 405(g) exhaustion requirements because (1) plaintiffs sought injunctive relief collateral to a claim for benefits, (2) plaintiffs suffered irreparable economic harm while awaiting administrative review, and (3) exhaustion would be futile because its underlying purposes would not be served. *Id.* at 86–87.

11. A district court's certification of a class action is reviewed for abuse of discretion. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir.1990).

12. "Although the absolute number of class members is not the sole determining factor, where the class is large in numbers, joinder will usually be impracticable." *Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (1982), *vac'd on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982) (district court abused its discretion by denying class certification of present and future employees subject to discrimination). Furthermore, "the joinder of unknown individuals is inherently impracticable." *Id.* at 1320.

In this case, Plaintiffs' proposed class includes at least hundreds of applicants who were denied disability benefits, as well as unknown future applicants who will be denied benefits. Pls.' Am.Compl. ¶¶ 23–24. Therefore Plaintiffs' proposed class is sufficiently numerous so that joinder is impracticable.

"Adequate representation as required by Federal Rules of Civil Procedure Rule 23(a)(4) 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992), *cert. den.*, —— U.S. ——, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994).

In this case, Plaintiffs' counsel have substantial experience in public benefit cases. Furthermore, Plaintiffs do not have antagonistic interests to the rest of the class: both Plaintiffs and the class members seek correction of the disability determination system used in Oregon.

For these reasons, Plaintiffs satisfy the numerosity and adequacy of representation requirements of FRCP 23(a).

## A. Commonality and typicality

■ "The threshold requirements of commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *Shipes v. Trinity Industries,* 987 F.2d 311 (5th Cir. 1993) (affirming certification of class action for civil rights violations), *cert. den.,* —— U.S. ——, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993). "A common nucleus of operative fact is usually enough to satisfy the *commonality* requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (affirming certification of class action of students suing beauty schools for fraud and substandard instruction), *cert. den.,* —— U.S. ——, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). Furthermore, "a plaintiff's claim is *typical* if it arises out of the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.*

In the present action, Defendants contend that Plaintiffs' claims are neither common nor typical because they require review of "individualized" facts. However, Defendants mischaracterize Plaintiffs' claims; Plaintiffs do not request review of individual denials of benefits, but rather seek judicial review of the disability determination *system.*

Nonetheless, in order to reveal systemic flaws in the disability determination procedure, the court must examine some individual facts because an unlawful, system-wide procedure is proven by a sufficient number of individual cases evidencing such a defect. However, this inquiry is different than the detailed scrutiny of case-specific facts required when reviewing individual denials of benefits.

■ Plaintiffs' claims involve common questions of law and fact because (1) they challenge system-wide procedures applicable to all class members and (2) by definition, all class members requested disability benefits which were denied at the initial or reconsideration stages. Furthermore, the class members' claims are typical because (1) they all arise out of Oregon DDS disability determinations and (2) they challenge the same state-wide DDS procedures. Consequently, the commonality and typicality requirements are satisfied.

## B. FRCP 23(b)(2)

■ Plaintiffs must also demonstrate that the party opposing the class has acted or failed to act on grounds "generally applicable to the class," thereby making injunctive and declaratory relief appropriate with respect to the class as a whole. FRCP 23(b)(2). However, this showing is merely based upon allegations in the complaint, and does not require inquiry into the merits of those allegations. *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975) (affirming certification of a class of stock purchasers under 10b–5 of the Securities Exchange Act); *See also, Guenther v. Pacific Telecom, Inc.,* 123 F.R.D. 333, 335 (D.Or.1988) ("For the purposes of rule 23, the allegations of the complaint are taken as true and the court does not consider the merits of the case.")

■ Plaintiffs allege the use of state-wide DDS disability determination procedures which violate the SSA and its implementing regulations. By definition, all class members have been subjected to the DDS disability determination system because all members were denied benefits at the initial or reconsideration stages. Furthermore, class members do not seek review of their individual denials of disability claims, but rather seek to change the State's disability determination system. Therefore, I find that Plaintiffs satisfy FRCP 23(b)(2) by showing that Defendants have acted, or failed to act, in a manner which is "generally applicable" to the entire class.

## C. Modification Of Class Definition

■ Defendants correctly assert that there must be an identifiable class of persons whom the named plaintiff purports to represent. *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). However, "this does not mean that the members of the class must actually be identified at the outset. Often the actual members of the class will not be known until the final claims process." Schwarzer, Tashima, Wagstaffe, *Rut-*

ter *Group Practice Guide: Federal Civil Procedure Before Trial* § 10.244 (1993) (citing *Bradford v. Sears, Roebuck and Co.* 673 F.2d 792, 795 (5th Cir.1982); *Jones v. Diamond,* 519 F.2d 1090 (5th Cir.1975)).

 In rejecting Defendants' requests to modify the class, I find that Plaintiffs' proposed class is sufficiently defined and identifiable for the following reasons. First, all class members have been subjected to the alleged illegal procedures because all members were denied disability benefits at the initial or reconsideration stages. Second, the class includes only applicants with "live claims" which have not lapsed for failure to appeal within 60 days of the administrative decision, thus providing an opening and closing date for the class. Third, class members challenge the State procedure for disability determinations, rather than the individual denials of their applications for benefits.

For these reasons, Plaintiffs' proposed class definition, as modified in Plaintiffs' Reply dated October 24, 1994, satisfies FRCP 23. Therefore, Plaintiffs' Motion for Class Certification (# 7–1) is GRANTED with respect to class definition as modified in Plaintiffs' Response.

### THE STATE'S MOTION TO DISMISS

### I. The State's Arguments In Support

The State makes the following three arguments in support of its Motion to Dismiss.

First, the State contends that federal question jurisdiction (28 U.S.C. § 1331) over the State is precluded by 42 U.S.C. § 405(h) which reads in part:

> No action against the United States, the Secretary, or officer or employee thereof shall be brought under sections 1331 or 1336 of Title 28, United States Code, to recover on any claim arising under this title.

Though that provision does not mention state defendants, the State argues that it applies to DDS officials. Defs.' Mem.Supp.Mot.Dismiss at 7–8 (citing *Chilicky v. Schweiker,* 796 F.2d 1131, 1135 n. 3 (9th Cir.1986) (discussed *infra* at 23), *rev'd on other grounds,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)).

Second, the State argues that Plaintiffs fail to state a claim under 42 U.S.C. § 1983 because they do not allege that the State "acted 'under color of state law' in making the disability determinations being challenged here." Defs.' Mem.Supp.Mot.Dismiss at 9. Instead, the state officials responsible for the DDS disability determination act "under color of federal law" because "federal involvement in the disability benefits program is so pervasive * * *." *Id.*

Third, § 1983 does not provide a cause of action under the SSA because (1) under 42 U.S.C. § 405(h), Congress expressly foreclosed enforcement of the SSA through § 1983, and (2) the comprehensive remedial scheme of the SSA precludes § 1983 enforcement. *Id.* at 11–12. In support of its proposition, the State discusses several cases where the court refused to find an implied right of action under a statute because there were sufficient safeguards in the statute itself.

### II. Plaintiffs' Arguments In Opposition

Plaintiffs respond to each of the State's arguments in turn, as follows.

First, Plaintiffs contend that 42 U.S.C. § 405(h) does not preclude federal jurisdiction because *Chilicky v. Schweiker* does not support the State's notion that § 405(h) bars jurisdiction over state defendants. (discussed *infra* at 1481) Pls.' Resp.Defs.' Mot.Dismiss at 4–5. Instead, footnote 3 of *Chilicky,* cited by the State, is limited to the peculiar facts in that case. *Id.* at 6–8. Furthermore, other circuits have held that § 405(h) does not bar suit against state defendants. *Id.* at 8–9.

Second, Plaintiffs argue that the State's officials act "under color of state," and the "fact that the state defendants are administering a federally-funded program is irrelevant." *Id.* at 10. Plaintiffs cite the Ninth Circuit and other courts for the proposition that § 1983 actions may be brought against state officials to enforce the SSA. *Id.* at 10–12. Furthermore, Plaintiffs conclude that the State's officials are acting under color of state law because they are given authority to administer the SSA through Oregon statutes. *Id.* at 11.

Third, Plaintiffs reject the State's argument that Congress intended to foreclose § 1983 claims to enforce rights under the SSA. Plaintiffs assert that the Supreme Court has repeatedly found jurisdiction to hear cases which challenge systemic flaws in the SSA. *Id.* at 12–13.

Finally, Plaintiffs assert that this Court has mandamus jurisdiction under 28 U.S.C. § 1361 to hear this suit, even if federal question jurisdiction does not exist. *Id.* at 14.

## III. Standard

■ A rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Pinhas v. Summit Health, Ltd.,* 894 F.2d 1024, 1028 (9th Cir.1989), *aff'd,* 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).

The court must take as true all material facts alleged in the complaint. *Western Concrete Structures Co., Inc. v. Mitsui & Co., Inc.,* 760 F.2d 1013, 1015 (9th Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). All doubts and inferences are resolved in favor of the plaintiff. *Preferred Communications, Inc. v. City of Los Angeles,* 754 F.2d 1396, 1399 (9th Cir. 1985), *aff'd,* 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986).

## IV. Discussion

### A. 42 U.S.C. § 405(h)

■ Section 405(h) reads in part, "No action against the United States, the Secretary, or officer or employee thereof shall be brought under sections 1331 or 1336 of Title 28, United States Code, to recover on any claim *arising under* [Title II of the SSA]."

(emphasis added) *see Weinberger v. Salfi,* 422 U.S. 749, 756, 95 S.Ct. 2457, 2462, 45 L.Ed.2d 522 (1975).[13] Though the express language of § 405(h) does not include states, the State cites footnote 3 of *Chilicky v. Schweiker,* 796 F.2d 1131, 1135 n. 3 (9th Cir.1986), *rev'd on other grounds,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), as holding that § 405(h) applies to and bars actions against states which administer the SSA. The State's wholesale reliance on footnote 3 of *Chilicky* is misplaced. Accordingly, I briefly examine the context and weight of footnote 3 of *Chilicky.*

In that case, defendants (state and federal administrators of the SSA) terminated plaintiffs' disability benefits. *Id.* at 1133. Consequently, plaintiffs sued defendants for due process violations. *Id.* at 1134. Though plaintiffs originally sought declaratory and injunctive relief, they withdrew those claims and proceeded for money damages under a *Bivens*[14] constitutional tort theory. *Id.* Pursuant to § 405(h), Defendants challenged the court's jurisdiction to hear *Bivens*-type claims. *Id.* at 1134–35. Though the Ninth Circuit held that § 405(h) applied to the state defendants,[15] it concluded that § 405(h) did not bar plaintiffs' claims because plaintiffs were seeking damages, rather than unpaid benefits. *Id.* at 1135. Therefore, plaintiffs' claims did not "arise under" the SSA, according to 405(h). *Id.* On appeal, the U.S. Supreme Court did not discuss the 405(h) jurisdictional issue, but rather dismissed the case by holding that *Bivens*-type claims were not available under the SSA. *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Therefore, the Ninth Circuit's holding on jurisdiction apparently remains valid.

Though the brief discussion of 405(h) in *Chilicky* was not abundantly clear, a review

---

**13.** Notably, it is indisputable that § 405(h) applies to actions against federal defendants. The issue to be resolved is whether § 405(h) applies to actions against a state which administers a federally funded program; are state's "officers or employees thereof" within the meaning of 405(h)?

**14.** That is, an implied right of action for constitutional violations. *See Bivens v. Six Unknown*

*Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**15.** In footnote 3, the court wrote, "[f]or jurisdictional purposes only, we conclude that [the state official] was acting under color of federal law." *Id.* at 1135, n. 3 (citing *Ellis v. Blum,* 643 F.2d 68, 76 (2d Cir.1981)).

of the case law reveals that the effect of § 405(h) involves two distinct issues:

> (1) whether 405(h) applies to suits against a state for violations of the SSA, and, if it does apply,

> (2) whether it bars the requested relief (*i.e.*, whether the claim "arises under" Title II of the SSA).

The Ninth Circuit in *Chilicky* arguably found that 405(h) restrictions did apply to the state defendant, but that 405(h) did not bar the plaintiff's *Bivens* claim for damages because it did not "arise under" Title II. 796 F.2d at 1135, n. 3. Therefore, the court apparently answered "yes" to the first issue and "no" to the second.

However, I find that footnote 3 in *Chilicky* does *not* stand for the proposition that 405(h) always applies to suits against state defendants. Rather, the court held only *in that case* that 405(h) applied to the state defendant. The case relied on in *Chilicky* and other Ninth Circuit precedent support this reading of footnote 3.

For instance, the *Chilicky* court quoted *Ellis v. Blum*, 643 F.2d 68, 76 (2d Cir.1981), in support of applying 405(h) to the State.[16] In *Ellis*, the court wrote, "[w]e have little doubt that * * * the scope of § 405(h) extends to suits in which claims against state officials are merely disguised disputes with the Secretary * * *." *Id.* at 76. However, the court held that plaintiff's claims against the federal and state defendants were distinct; consequently, "there is no reason to extend the ban of § 405(h) to preclude § 1331 jurisdiction over claims for prospective relief against the state defendants in this case." *Id.* Therefore, the court declined to apply § 405(h) to the state defendants, thus recognizing that in *some* cases, § 405(h) ap-

plies to a state defendant, but not in *all* cases.

The Ninth Circuit's decision in *Hooker v. U.S. Dept. of HHS*, 858 F.2d 525 (9th Cir. 1988), also supports this conclusion. In *Hooker*, with federal approval, the state canceled plaintiff's husband's disability benefits. *Id.* at 527. The husband subsequently committed suicide and plaintiff brought suit under the Federal Tort Claims Act against the United States and state defendants for the negligent termination of disability benefits. *Id.* at 528–29.

First, the Ninth Circuit held that § 405(h) barred the suit against the *federal* defendant because the claim was "arising under" Title II. *Id.* at 529–30. Next, the court also dismissed plaintiffs' tort claim against *state* defendants for lack of jurisdiction pursuant to § 405(h) because plaintiffs' claim was " 'merely a disguised dispute with the Secretary' * * *." *Id.* at 530 (quoting *Ellis v. Blum* at 76). Therefore, the court made two important conclusions which parallel the separation of issues discussed *supra* at 1481:

> (1) § 405(h) applied to the state because the claim was a "disguised dispute with the Secretary" and

> (2) the tort claim was one "arising under" Title II.

Based upon these two conclusions, the court held that § 405(h) barred the tort action against the state.

■ Contrary to the factual conclusion in *Hooker*, but in conformity with the conclusion in *Ellis*, I find that Plaintiffs' claims in this case are not "disguised dispute[s] with the Secretary," but rather are distinct.[17] Therefore, based upon the legal principles discussed above, I conclude that § 405(h) does not apply to Plaintiffs' claims against the State.[18] Consequently, I reject the

---

16. In *Ellis,* plaintiff sued state officials and the Secretary of Health and Human Services for providing inadequate notices prior to terminating disability benefits. *Id.* at 72–73. Plaintiff sought damages and injunctions requiring the state defendants to change their notice procedure and requiring the Secretary to insure defendants' compliance. *Id.* The Second Circuit court held that the district court had jurisdiction to hear plaintiff's claims, and remanded the case for further proceedings. *Id.* at 85–86.

17. Plaintiffs seek declaratory and injunctive relief against the State to change procedures which violate the SSA. Plaintiffs seek declaratory and injunctive relief against the Secretary to monitor the State's performance.

18. Because I find that § 405(h) does not apply to the State in this case, and thus does not bar Plaintiffs' action against the State, I need not determine whether Plaintiffs' claims "arise under" the SSA.

State's argument that § 405(h) bars Plaintiffs' claims.

### B. Color of state law

■ Relying on footnote 3 of *Chilicky*, the State further argues that Plaintiffs cannot maintain a § 1983 action because the State acted under color of federal law rather than state law.[19] Footnote 3 reads, *"[f]or jurisdictional purposes only,* we conclude that [the state official] was acting under color of federal law." 796 F.2d at 1135, n. 3 (emphasis added). This footnote contains a clear caveat and thus does not adequately support the State's assertion that it acts under color of federal law for § 1983 liability purposes.

Furthermore, the State incorrectly assumes that the Ninth Circuit follows *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981) (holding that § 1983 was unavailable because state officials acted under color of federal law in administering pre-termination notices under SSA) merely because the court quoted a portion of *Ellis* in footnote 3 of *Chilicky.* One citation to part of *Ellis* does not represent adoption of the entire opinion; Ninth Circuit law is to the contrary.

I find *Tongol v. Usery,* 601 F.2d 1091 (9th Cir.1979), instructive. In that case, state defendants administered a federal act which issued unemployment compensation benefits. *Id.* at 1094. Plaintiffs received overpayment of benefits which federal regulations required them to return, even though state laws waived recoupment. *Id.* Plaintiffs challenged the validity of the federal regulations and also claimed attorney fees pursuant to 42 U.S.C. § 1988.[20] *Id.* at 1095–96. The district court invalidated the regulations but did not allow recovery of attorney fees because state defendants were not acting under "color of state law," thus plaintiffs could not state a § 1983 claim. *Id.* at 1096–97.

On appeal, the Ninth Circuit discussed the "color of state law" requirement:

[t]he "color of state law" requirement of section 1983 " 'has consistently been treated as the same thing as the 'state action' " requirement of the Fourteenth Amendment. [citations omitted]. Courts applying the "color of state law" requirement have indicated that the relevant inquiry focuses not on whose law is being implemented, but rather on whether the authority of the state was exerted in enforcing the law. [citations omitted]. Thus the actions of state agencies administering federally-funded programs have been held to be actions undertaken under color of state law for the purposes of section 1983. [citation omitted]

*Id.* at 1097. The court held that "the state officials * * * were empowered to act only by virtue of their authority under state law," thus plaintiffs stated a claim for relief under § 1983. *Id.*

■ Nonetheless, "[t]here is no set formula for determining whether the employees of an agency with both state and federal characteristics act under color of state law. All of the circumstances must be examined to consider whether the acts complained of were sufficiently linked to the state." *Johnson v. Orr,* 780 F.2d 386, 390 (3d Cir.1986) (holding that federal agent of National Guard acted "under color of state law" when dismissing employees because personnel matters are administered by the state), *cert. den.,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). "A crucial inquiry is 'whether day-to-day operations are supervised by the Federal [or state] government.' " (quoting *United States v. Orleans,* 425 U.S. 807, 815, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976)).

■ In the present case, the Disability Determination Services (DDS) makes eligibility determinations on behalf of the federal

---

**19.** 42 U.S.C. § 1983 (1994) allows suits for violations of civil rights if the violator acts under color of state law: "Every person who, *under color of* any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured * * *." (Emphasis added).

**20.** Section 1988 permits recovery of attorney fees where the prevailing party enforces a provision of § 1983. *Id.* at 1096.

government. However, the DDS is formed by the Vocational Rehabilitation Division (VRD) which is created and empowered by Oregon statute. *See* ORS §§ 344.511–344.690 (1993). In fact, section 344.540 requires VRD to

> cooperate with the Federal Government in carrying out the purposes of any Federal Act pertaining to vocational rehabilitation, and in any related matters of mutual concern * * * * [furthermore, VRD] [m]ay apply for federal funds and accept and enter into any contracts or agreements in behalf of the state for the receipt of such funds from the Federal Government or its agencies for vocational rehabilitation purposes.

Likewise, the Department of Human Resources (DHR) which contains VRD, is also created by Oregon statute. *See* ORS § 409.010. Furthermore, the Oregon Governor appoints the director of the DHR. ORS § 409.100. The DDS, VRD, and DHR are Oregon agencies created by Oregon law and are empowered to act by Oregon law, not federal law. Cooperation with the federal government does not erase the manifest state action of these Oregon agencies.

For these reasons, I conclude that the State Defendants act under "color of state law" for the purposes of § 1983.

### C. Section 1983 to enforce rights under the SSA

■■■■ "A person alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or (2) 'Congress has foreclosed such enforcement of the statute in the enactment itself.' " *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) [citation omitted] (holding that the Boren Amendment creates a private right of action enforceable under § 1983). "The burden is on the State to show 'by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.' " [citation omitted]. *Id.* at 520–21, 110 S.Ct. at 2523.

In this case, the State admits that "no court has held that this statutory scheme is sufficiently comprehensive to foreclose private enforcement under section 1983." Defs.' Reply at 12. Nevertheless, the State contends that the SSA's comprehensive remedial scheme evidences Congress' intent to foreclose private enforcement of the SSA.

■■■■ On the contrary, the SSA remedial scheme only applies to the recovery of benefits. Therefore, Plaintiffs cannot receive their desired declaratory and equitable relief through the present SSA remedial scheme. Furthermore, the Supreme Court in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), acknowledges that "the SSA affords no private right of action against a state" and " 'suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States.' " *Id.* at 4–6, 100 S.Ct. at 2504 [citations omitted] (holding that claimants could enforce federal conditions of the SSA against state officials under § 1983).

I conclude that Congress did not provide a remedial scheme to address Plaintiffs' prospective relief, therefore the State has not carried its burden to show that Congress intended to foreclose Plaintiffs' § 1983 cause of action. Therefore State Defendants' Motion to Dismiss (# 26–1) is DENIED.

■■■■ Because I find that this Court has jurisdiction to hear Plaintiffs' claims pursuant to 28 U.S.C. § 1331, and that Plaintiffs state a viable § 1983 action against the State, I do not address whether this Court has mandamus jurisdiction over the State.

The parties should be well aware that this decision is made in an FRCP 12(b)(6) setting where all allegations in the Complaint must be accepted as true. As discussed with counsel during oral argument, the allegations, though sufficient for federal notice pleading standards, are not well focused. The Court will be reevaluating the Plaintiff's position with great scrutiny after further discovery has been undertaken and the case is ripe for summary judgment.

## CONCLUSION

IT IS ORDERED Plaintiffs' Motion for Class Certification (# 7–1) is GRANTED. IT IS FURTHER ORDERED State Defendants' Motion to Dismiss Plaintiffs' Complaint (# 26–1) is DENIED.