**Daniel J. SCHOOLCRAFT; Theodore Thomas, and Joseph Drumbeater, individually and on behalf of all others similarly situated, Appellants,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Department of Health and Human Services; Walter Roers, in his official capacity as Director of the Disability Determination Services; R. Jane Brown, in her official capacity as Commissioner of the Minnesota Department of Jobs and Training, Appellees.**

No. 91–1643.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1991.

Decided July 2, 1992.

Rehearing and Rehearing En Banc Denied Oct. 9, 1992.

Laurie N. Davison, Minneapolis, Minn., argued (M. Francesca Chervenak, Kathleen M. Davis, and Barbara J. Kuhn, on the brief), for appellants.

Howard S. Scher, Dept. of Justice, Washington, D.C., argued (Donald Notvik, Asst. Atty. Gen., St. Paul, Minn., on the brief), for appellees.

Before LAY,* Chief Judge, ARNOLD,** Circuit Judge, and STUART,*** Senior District Judge.

---

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The HONORABLE RICHARD S. ARNOLD became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

*** The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the

LAY, Chief Judge.

■ This is an appeal from the district court's [1] award of summary judgment dismissing a class action [2] complaint filed by three individuals, Daniel J. Schoolcraft, Theodore Thomas and Joseph Drumbeater, against Louis W. Sullivan, Secretary of the Department of Health and Human Services (Secretary), and Walter Roers and R. Jane Brown in their official capacities as Director of Minnesota's Disability Determination Services and Commissioner of the Minnesota Department of Jobs and Training, respectively. Plaintiffs challenged the procedures and standards applied by defendants to disability claims involving chronic alcoholism or some other drug dependency. *See Schoolcraft v. Sullivan*, 753 F.Supp. 1478 (D.Minn.1991). At the time the class action was filed, January 25, 1990, each of the plaintiffs had applied for disability benefits by reason of chronic alcoholism. The district court awarded summary judgment to the defendants and dismissed the complaint for lack of subject matter jurisdiction based upon the plaintiffs' failure to exhaust their administrative remedies. Consequently, the court concluded that plaintiffs' motion for class certification was moot. Jurisdiction was alleged under 42 U.S.C. § 405(g) (1988), 28 U.S.C. §§ 1331, 1343(3) and 1361 (1988).[3]

The initial determination of a claim for disability benefits is made by a state agency pursuant to regulations, guidelines and standards established by the Secretary. 42 U.S.C. §§ 421(a), 421(k)(1), 1383(a) (1988). If the initial determination is adverse, the claimant may request a de novo reconsideration of the claim by the same state agency. 20 C.F.R. § 404.904–.909 (1991). In Minnesota, the Disability Determination Services of the Minnesota Department of Jobs and Training (DDS) has been designated to handle these first two stages of the administrative adjudication process. The DDS acts under the authority and control of the Secretary. 42 U.S.C. §§ 421(a), 421(k)(1), 1383b(a) (1988); 20 C.F.R. §§ 404.1503(a), 416.903(a) (1991). Failure to seek a reconsideration renders the initial decision binding on the claimant. If the reconsideration is adverse, the claimant is entitled to a hearing by the Secretary and may request a de novo hearing before an administrative law judge (ALJ). 42 U.S.C. §§ 405(b)(1), 421(d), 1383(c)(1) (1988); 20 C.F.R. § 404.967–.981 (1991). Failure to request a hearing before an ALJ renders the adverse reconsideration a final decision. If the ALJ's decision is adverse to the claimant, the claimant may appeal that decision, within sixty days, to the Social Security Administration Appeals Council (Appeals Council). A final decision exists once the Appeals Council has denied review or has issued its own decision. After exhaust-

---

Southern District of Iowa, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. The class allegedly consists of over 4000 plaintiffs, each of whom sought benefits based on disability due to chronic alcoholism.

3. Subsequent to the filing of the class action, Schoolcraft and Drumbeater were awarded disability benefits in May 1990 and Thomas received benefits in February 1991. The defendants allege that this moots the law suit. We must respectfully disagree. The district court denied certification of the class as moot on the basis that it lacked jurisdiction to entertain the complaint. This court finds that jurisdiction to hear the case does lie with the federal courts. Plaintiffs' motion for class certification is not moot as it was not decided upon the merits. Notwithstanding the grant of eligibility, these plaintiffs continue to have a personal stake in

the litigation because their continuing eligibility is subject to periodic review. *United States Parole Comm. v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Wilkerson v. Bowen*, 828 F.2d 117 (3d Cir.1987). Since the class action was denied *before* the named plaintiffs were awarded disability benefits, as part of our judgment we remand this cause for determination of class certification with instructions that class certification should relate back to January 25, 1990.

The instant case can be distinguished from *Shipman v. Missouri Dep't of Family Servs.*, 877 F.2d 678 (8th Cir.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 837 (1990), in which this court held that where plaintiffs fail to file a motion requesting a ruling on the issue of class certification and the district court does not rule on the issue, the court loses jurisdiction where the named plaintiffs' personal claims become moot.

ing these remedies, a claimant may file a complaint in federal district court requesting an award of benefits pursuant to section 405(g). *See* 42 U.S.C. §§ 421(d), 1383(c)(3). In the present case, plaintiffs have admittedly not exhausted their administrative remedies.

This suit is not for benefits.[4] Unlike the plaintiffs in *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), in which the relief sought was a change in the Secretary's policy so that the claimants would not have to resort to the administrative process to receive benefits, the relief sought by plaintiffs would not determine whether they would receive benefits. The relief sought is that defendants apply the same standards to plaintiffs' claims for benefits at each stage of the administrative process. *See* 42 U.S.C. § 421(k)(1) ("[t]he Secretary shall establish by regulation uniform standards which shall be applied at all levels of determination, review, and adjudication in determining whether individuals are disabled...."). Plaintiffs allege that defendants do not follow the five-step analysis required by the Secretary's regulations.[5] Specifically, plaintiffs allege that at the third step of the analysis the adjudicator is also or alternatively required to consider whether the claimant is addicted to alcohol and has "lost the voluntary ability to control its use." *See Adams v. Weinberger*, 548 F.2d 239 (8th Cir.1977). Plain-

tiffs argue that *Adams* established an alternative to section 12.90 listings. *See supra* note 5. Although the ALJ and Appeals Council typically employ the *Adams* analysis at stage three, the state defendants allegedly do not. The record shows that at least two individuals who evaluate claims at the state level testified that neither the Secretary nor the Social Security Administration (SSA) had instructed DDS employees that they must determine whether a claimant can voluntarily control his or her use of alcohol when evaluating a claim for disability benefits due to drug dependency. These DDS employees were not aware of any such requirement and had never applied the *Adams* standard when evaluating such claims. Plaintiffs assert that as the *Adams* standard is considered by the ALJ and the Appeals Council it ought to be considered at the initial and reconsideration adjudications conducted by the state DDS at the direction of the SSA and the Secretary.

Although to some extent the merits relate to the jurisdictional issue, resolution of the merits does not determine the question of jurisdiction. We address only whether the district court erred in its jurisdictional ruling.

*Section 405(g)*

■ In order for the district court to have subject matter jurisdiction under section 405(g),[6] a claimant must have present-

---

**4.** At the time of this action, each individual claimant had been denied benefits in the initial and reconsideration level by the state defendants.

**5.** *See Bowen v. City of New York*, 476 U.S. 467, 470, 106 S.Ct. 2022, 2024, 90 L.Ed.2d 462 (1986). Assuming a claimant is not engaged in substantial gainful activity and is found to suffer from an impairment which is severe and limits the claimant's basic work activity, then the administrative adjudication moves to the third step of the five step analysis. If the impairment is severe, the claim is evaluated under the third step of the analysis to determine whether the claimant's impairment meets or equals the severity of an appropriate listed impairment. If a claimant alleges disability based on alcoholism or dependency on another drug, the claim is evaluated under section 12.09 listings. If it does meet or equal a listed impairment under section 12.09, the claimant is conclusively presumed to be disabled. When the impairment is severe but is not listed, then the fourth stage of the

analysis is used to assess the residual functional capacity (RFC) and to determine whether the claimant is able to perform work formerly done. If he is able, he is not considered disabled and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1991). If the claimant is not able to do the former work, the analysis moves to the fifth and final stage at which it is determined whether the claimant can do any other work available in the national economy given the age, education, and work experience of the person. If the claimant cannot do any other work, disability is found. 20 C.F.R. § 404, subpart P, appendix 1 (1991).

**6.** Title 42 U.S.C. § 405(g) specifies the following requirements for judicial review: (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision; and (3) filing of the action in an appropriate district court. *Weinberger v. Salfi*, 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975).

ed a claim for benefits to the Secretary and exhausted the administrative remedies prescribed by the Secretary. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The second element of jurisdiction, the exhaustion of the administrative remedies, although jurisdictional, is nonetheless deemed waivable. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 900 n. 11, 47 L.Ed.2d 18 (1976) (jurisdictional requirement of exhaustion under section 405(g) relates to the requirement of finality). As the district court notes, in the instant case the claimants, as defined in plaintiffs' motion for class certification, all satisfy the jurisdictional requirement that a claim for benefits has been made to the Secretary. The putative class consists entirely of individuals who have not exhausted the administrative remedies available to them, however. Therefore, in order for their claims to be heard in federal court, exhaustion must be waived.

Under *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), waiver of administrative exhaustion may be admitted only under special circumstances. The Secretary urges that such circumstances are present only where the challenged policy was adopted in secret and where (1) the issues were entirely collateral to the claim for benefits; (2) the injury could not be remedied by a retroactive payment; and (3) exhaustion would be futile. *City of New York,* 476 U.S. at 483, 106 S.Ct. at 2031, *aff'g, City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984), *aff'g,* 578 F.Supp. 1109 (E.D.N.Y.1984). We agree that waiver of administrative remedies is the exception to the general rule. However, we find the present case presents an exceptional circumstance and waiver should be allowed.[7]

*City of New York* began as a class action challenging the SSA's internal policy of determining disability benefits based on a general listing of impairments instead of individual assessments. The district court declared that policy illegal, and the Secre-

tary appealed the court's decision to grant relief to claimants who had failed to exhaust administrative remedies. The Supreme Court divided the class into two groups. Relief for the first group, for whom administrative remedies were no longer available when the internal policy became public, was affirmed with little explanation other than noting that requiring exhaustion would be unfair because the claimants could not have challenged the unknown policy. *City of New York,* 476 U.S. at 478–82, 106 S.Ct. at 2029–31; *see also Pittson Coal Group v. Sebben,* 488 U.S. 105, 123, 109 S.Ct. 414, 425, 102 L.Ed.2d 408 (1988). In addition, notwithstanding the fact that the second group of plaintiffs still had time to exhaust their administrative remedies at the time the suit was filed and the Secretary's secret policy was revealed, the Court found jurisdiction to review their claims under section 405(g). *City of New York,* 476 U.S. at 482–86, 106 S.Ct. at 2031–33. In view of these factors, the district court erred in ruling that a secret policy is a prerequisite to waiver of exhaustion. *Accord Marcus v. Sullivan,* 926 F.2d 604 (7th Cir.1991); *Bailey v. Sullivan,* 885 F.2d 52 (3d Cir.1989).

*City of New York,* relying on *Mathews v. Eldridge,* 424 U.S. 319, 331, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976), requires that claimants show (1) their claims are collateral to their claim of benefits; (2) that irreparable injury will follow; and (3) that exhaustion would otherwise be futile. We find that plaintiffs have established these prerequisites to waiver and that the district court erred in dismissing their claim against the defendants for lack of jurisdiction.

■ In the instant case, the district court refused to waive the requirement of exhaustion of administrative remedies, reasoning that (1) plaintiffs had not challenged a secret policy of HHS; (2) plaintiffs' claims were not collateral to their individual claims for benefits; and (3) claimants had not shown irreparable harm because exhaustion of their administrative remedies

---

7. As the Court has explained, the Secretary has discretion to decide when to waive the exhaustion requirement, but cases may arise where

deference to the agency's judgment is inappropriate. *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900.

and awarding of retroactive benefits, where appropriate, would remedy the wrong. On this basis, the district court concluded it did not have jurisdiction to entertain the complaint under section 405(g).

Although their present contentions may be intertwined with their claims for benefits, plaintiffs' claims are nonetheless sufficiently collateral to justify waiver of exhaustion. Here the class does not seek benefits in the district court, rather, as in *City of New York,* they challenge the Secretary's failure to ensure that uniform standards are applied at all levels of review. Like the claims in *City of New York,* the plaintiffs' claims in this case are collateral to their claims for benefits. Despite its close resemblance to the claim presented in *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the *City of New York* Court determined that the issue in *City of New York* was collateral because it involved the Secretary's failure to follow the applicable regulations. *See also Marcus v. Sullivan,* 926 F.2d 604 (7th Cir.1991); *Johnson v. Sullivan,* 922 F.2d 346, 351 (7th Cir.1991) (en banc); *New York v. Sullivan,* 906 F.2d 910, 912–13 (2d Cir.1990). In *City of New York,* the claimants were excused from administrative exhaustion and allowed to proceed directly to district court because

they had challenged the very procedure by which their claims were processed.[8] The Court found that whether claimants received the "procedure they should have been afforded in the first place" was entirely collateral to the merits of their claims for benefits. *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032. The instant case presents a similar situation.

The district court's attempt to distinguish plaintiffs' claims as substantive rather than procedural is, under the existing circumstance, not a controlling factor.[9] The fact remains that plaintiffs' claims are independent of their claims for disability and thus are sufficiently collateral to support waiver of exhaustion.

Second, we find claimants have made a sufficient showing of irreparable harm resulting from the defendants' practices. Claimants have produced over 200 affidavits which clearly demonstrate the harms caused by administrative exhaustion in these individual cases.[10] The district court held that retroactive benefits provided an adequate remedy. The overwhelming body of case law, however, is to the contrary. *See, e.g., Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (months of delay in receipt of necessary Social Security income on which one has depended for the very necessities of life cannot be fully remedied by the "belated retroaction of benefits"); *Eldridge,* 424

---

**8.** The central issue is whether plaintiffs' claims fall within the factual setting of *City of New York* or *Ringer.* In focusing on whether exhaustion should be waived, the Supreme Court in *City of New York* stated:

This case is materially distinguishable from one in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding. In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation. Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context. Thus, our holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings.

These claimants stand on a different footing from one arguing merely that an agency incorrectly applied its regulation. Rather, the

District Court found a systemwide, unrevealed policy that was inconsistent in critically important ways with established regulations.

*City of New York,* 476 U.S. at 484–85, 106 S.Ct. at 2032–33.

**9.** Analysis regarding whether something is procedural or substantive often leads to obtuse characterization of the issue. In the present case, plaintiffs assert that state officials are applying standards at the initial stages of review which are inconsistent with the Social Security Act and the Constitution. *See supra* n. 5.

**10.** For example, Thomas Smith was homeless until he was awarded benefits by an ALJ 14 months after he had applied for benefits. Smith Decl. ¶ 15 Jt.App. 234, 236. Other members of the class, such as Jerome Arnold, Joseph Darikely and Dale Leonard, were living on the streets as of the date of this appeal because they could not find housing they could afford.

U.S. at 331, 96 S.Ct. at 900 ("an erroneous termination [of benefits] would damage [claimant] in a way not recompensable through retroactive payments").

Finally, the district court determined that the purposes underlying the exhaustion doctrine would not be served if waiver were permitted in the present case. We must again respectfully disagree. The purposes of administrative exhaustion are set forth in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In *Salfi,* the Court explained that exhaustion is required in order that "the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Id.* at 765. The *Salfi* Court found that exhaustion would have been futile and inconsistent with those policies, and characterized the relief ordered— reopening the claims—as showing "proper respect for the administrative process." *Id.* Indeed, stressing the pragmatic basis of the exhaustion doctrine, the Court has directed that the doctrine's application be governed by the policies underlying the exhaustion requirement rather than by "mechanical application of the *Eldridge* factors." *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032.

We find great similarity between the present case and *Mental Health Ass'n v. Heckler,* 720 F.2d 965 (8th Cir.1983).[11] In holding that administrative remedies should be waived, the *Mental Health Ass'n* court noted that the irreparable harm inherent in the pursuit of administrative relief and the apparent inadequacy of it to redress the interests of the class were not alleviated but rather exacerbated by reversals on appeal. *Id.* at 970. We agree with claimants' representation that eventual correction of the errors of DDS will not cure the alleged harm. As plaintiffs urge, even though exhaustion may often result in benefits being awarded it *"never* removes or corrects the systemic errors at the initial

and reconsideration stage[s] of the administrative process." Appellants' brief at 31. As the Second Circuit stated in *Jones v. Califano,* 576 F.2d 12 (2d Cir.1978), under analogous circumstances, with exhaustion requirements "SSA could operate indefinitely ... with two standards ... one for claimants who seek review by the Appeals Council, and one for claimants who do not." *Id.* at 17.

We think the most telling and forceful argument plaintiffs make is that unless exhaustion is waived, if the *ALJ* implements the correct procedures and applies the correct standards and, where appropriate, awards benefits, there will never be judicial review to challenge the actions the DDS takes at the initial and reconsideration stages. Exhaustion would be futile if the challenged policy could never be judicially reviewed. As stated in *City of New York:* "We should be especially sensitive to this kind of harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." 476 U.S. at 484, 106 S.Ct. at 2032; *see also Barry v. Barchi,* 443 U.S. 55, 63 n. 10, 99 S.Ct. 2642, 2648 n. 10, 61 L.Ed.2d 365 (1979) (no need to exhaust procedures when action concerns the legality of those procedures); *Touche Ross & Co. v. SEC,* 609 F.2d 570, 577 (2d Cir.1979) (to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking); *Jones v. Califano,* 576 F.2d 12 (2d Cir.1978) (exhaustion waived because futile in light of the Secretary's final position and the possibility of repeated reversal on appeal frustrating review of the constitutional issue).

We conclude that the district court erred in failing to waive the exhaustion requirement of section 405(g) and in preventing the suit against the Secretary from proceeding.

*Section 1361*

Jurisdiction under section 1361 by way of writ of mandamus is sought only against

---

11. *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), involved the same issue, termination of mental health benefits, later challenged in the *City of New York* case.

the Secretary. Since we find waiver of exhaustion and jurisdiction against the Secretary established under section 405(g) review, we need not discuss the plaintiffs' mandamus claim.[12] We note, however, that this court and other courts have found an alternative basis for jurisdiction under section 1361 in similar circumstances. *See, e.g., Mental Health Ass'n v. Heckler*, 720 F.2d 965, 971 n. 71 (8th Cir.1983). On this ground the order dismissing the claim under mandamus is vacated. The district court may well choose to issue a writ of mandamus requiring the Secretary to direct the state officials to follow the Secretary's procedures and the standards of this circuit.

*State Defendants*

■ Plaintiffs assert jurisdiction against the state defendants under sections 1331 and 1343(3).[13] We think plaintiffs' reliance on section 1343(3) is misplaced. As stated by the Court in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979):

> The Social Security Act does not deal with the concept of "equality" or with the guarantee of "civil rights" as those terms are commonly understood. The Congress that enacted § 1343(3) was primarily concerned with providing jurisdiction for cases dealing with racial equality; the Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of these statutes are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Chapman*, 441 U.S. at 621, 99 S.Ct. at 1917 (footnote omitted).

Nonetheless, the allegation is made that the state defendants, acting under color of state law, violated the federal regulations and applicable federal law (as well as the United States Constitution). Under these circumstances, although plaintiffs do not expressly allege a violation under 42 U.S.C. § 1983 (1988), we find federal question jurisdiction sufficiently pled under section 1331. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

The state defendants assert 42 U.S.C. § 405(h) (1988) bars federal question jurisdiction against them. We disagree. Section 405(h) reads: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331 et seq.] to recover on any claim arising under [Title II of the Social Security Act]." *See Weinberger v. Salfi*, 422 U.S. 749, 756, 95 S.Ct. 2457, 2462, 45 L.Ed.2d 522 (1975); *Schoolcraft*, 753 F.Supp. at 1478, 1490. This provision expressly applies only to officials of the United States. Although DDS is responsible for carrying out the Secretary's regulations and policies, it operates pursuant to state statutory authority. *See* Minn.Stat. § 268A.03(e) (1990). The Commissioner of Department of Jobs and Training is required to:

> maintain a contractual or regulatory relationship with the United States as authorized by the Social Security Act, as amended. Under this relationship, the state will undertake to make determinations referred to in those public laws with respect to all individuals in Minnesota, or with respect to a class or classes of individuals in this state that is designated in the agreement at the state's request. It is the purpose of this relationship to permit the citizens of this state to obtain all benefits available under federal law.

Minn.Stat. § 268A.03(d).

---

12. Since we find jurisdiction under section 405(g), we need not discuss section 1331 jurisdiction as to the plaintiffs' constitutional claims against the Secretary. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

13. 28 U.S.C. § 1343(3) states: "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The state defendants are neither officers nor employees of the federal government.[14]

Claimants allege that these state officers in their official capacities, acting under color of state law, violated federal law and the United States Constitution by failing to apply the proper criteria. On this basis plaintiffs properly assert federal question jurisdiction under section 1331.

Whether the challenged practices and policies are inconsistent with or violative of the Secretary's policies is an issue for the district court to resolve. If plaintiffs' claims have merit, as the depositions of the state officers indicate, perhaps the Secretary and the claimants can settle their differences. If the individuals are harmed, as plaintiffs have alleged, the institutional concern should be great and the wrong readily remedied.[15]

The judgment dismissing the plaintiffs' claim for lack of jurisdiction is vacated and the cause is remanded for further proceedings in accordance with this opinion.

**14.** In this regard we disagree with the holding of the Second Circuit that the state defendants are acting solely as agents of the United States. *See Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981).

**15.** This entire litigation is somewhat bewildering to this court. In oral argument the government stated that there is no merit to plaintiffs' claims because the DDS presently adheres to the SSA's standards and regulations which purportedly comply with the legal standards and procedures claimants deem applicable. Thus, the issue is whether the plaintiffs are correct in asserting that the Secretary has failed to properly instruct the state officials to do what the Secretary agrees should be done. If all this is true, the Secretary can easily remedy this dispute and save everyone a great deal of time and expense by entering into a consent judgment in the district court specifically stating the applicable standards are to be applied at each stage of the claim evaluation process.