Janette L. SURRELL, On her own Behalf and on Behalf of all Others Similarly Situated, Plaintiffs,

v.

Douglas WILLMAN, in his Official Capacity as Director of the Nebraska Disability Determination Services, and Kenneth S. Apfel, Commissioner of the Social Security Administration, Defendants.

No. 4:97CV3369.

United States District Court,
D. Nebraska.

Sept. 4, 1998.

Timothy J. Cuddigan, Brodkey, Cuddigan Law Firm, Omaha, NE, Max Schott, Thomas A. Krause, Schott Law Firm, Des Moines, IA, for Plaintiffs.

Lauren L. Hill, Nebraska Attorney General's Office, Lincoln, NE, Sally R. Johnson, Paul D. Boeshart, Assistant United States Attorneys, Lincoln, NE, Richard G. Lepley, W. Scott Simpson, U.S. Department of Justice, Civil Division—Federal Programs Branch, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

KOPF, District Judge.

### I. BACKGROUND

Plaintiff Janette Surrell has filed a class action [1] complaint (filing 1) in which she challenges various policies, practices, and procedures used by the Director of the Nebraska Disability Determination Services Bureau ("state defendant") and the Commissioner of Social Security ("federal defendant") in evaluating claims for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff complains that the state defendant, at the direction of the feder-

al defendant, has established "a system of policies and a pattern of practice" whereby Social Security disability determinations are based "on erroneous legal standards which result in a finding of non-disability for persons who, if the federal statutes and caselaw were properly applied, would be found disabled." (Filing 1 ¶ 1, 11.) The complaint states that Plaintiff does not challenge specific disability determinations made by the state defendant, nor does Plaintiff seek an award of benefits for any class member; rather, Plaintiff prays for declaratory and injunctive relief that would require both defendants to utilize proper standards and procedures in the disability determination process. (Filing 1 ¶ 1.)

According to the complaint, the plaintiff was denied Supplemental Security Income benefits by the state defendant, who is the head of the state agency which makes disability determinations at the initial and reconsideration levels for the Social Security Administration. (Filing 1 ¶¶ 1, 4, 5.) Plaintiff alleges that the state defendant denied her application for benefits because the state defendant failed to: obtain a proper consultative examination and report; properly evaluate her subjective allegations; make an express credibility determination; set forth inconsistencies in the record that caused the state defendant to reject Plaintiff's subjective allegations; utilize the services of a qualified vocational specialist in evaluating nonexertional limitations; and support the state defendant's assessment of residual functional capacity. (Filing 1 ¶¶ 13–17.)

The plaintiff also claims that the state defendant evaluates claims for disability benefits contrary to the standards contained in the Social Security Act, its implementing regulations, and the case law interpreting the Act and its regulations. (Filing 1 ¶ 18.) Specifically, Plaintiff challenges several policies, practices, and procedures which have allegedly resulted in denials of Social Security Disability Insurance and Supplemental Security Income benefits to Nebraska residents in the three years immediately prior to the

---

1. The court has not yet considered Plaintiff's request for class action status pursuant to Fed. R.Civ.P. 23. (*See* Complaint, Filing 1, at 7 ¶ B.)

filing of this action, and which may result in the denial of benefits to Nebraska residents who in the future may apply for such benefits. The challenged policies, practices, and procedures are: (1) failure to properly evaluate the claimant's subjective allegations pursuant to 42 U.S.C. § 423(d)(1)(A) and *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984), *supplemented,* 751 F.2d 943 (8th Cir.1984); (2) failure to make express credibility determinations and recite the inconsistencies in the record that led to rejection of the claimant's complaints of pain, with express discussion of the five *Polaski* factors; (3) failure to obtain a proper consultative examination and report, contrary to numerous federal regulations; (4) failure to utilize the services of a qualified vocational specialist in evaluating the claimant's claim, contrary to federal regulations and Eighth Circuit law; and (5) failure to document assessments of residual functional capacity, contrary to specific federal regulations and Social Security Rulings. (Filing 1 ¶ 7.)

With regard to the federal defendant, Plaintiff sues on behalf of herself and other Nebraska residents who, in the 60 days immediately prior to the filing of this lawsuit have been, or who in the future may be, denied Social Security Disability Insurance and Supplemental Security Income benefits as a result of the federal defendant's failure to properly exercise "oversight authority" over disability determinations made by state agencies pursuant to 42 U.S.C. § 421(a)(2) and to follow Eighth Circuit case law. (Filing 1 ¶ 8.)

Plaintiff prays for the following relief: (1) a declaratory judgment that the state defendant's standards, policies, and procedures in determining eligibility for Social Security Disability Insurance and Supplemental Security Income benefits violate federal statutes, regulations, and Eighth Circuit case law; (2) a declaratory judgment that the federal defendant's standards, policies, and procedures in exercising oversight of the state defendant in making its disability determinations and its failure to follow Eighth Circuit case law violate federal laws; (3) a permanent injunction prohibiting the state and federal defendants from using the disputed standards, policies, and procedures in making Social Security disability determinations; (4) an order requiring the state and federal defendants to perform disability redeterminations for all class members, using the correct disability determination standards; and (5) an order requiring the state and federal defendants to allow "the monitoring" of future disability determinations and to report to the court on the results of that monitoring. (Filing 1, at 7 ¶¶ B–G.)

## II. MOTIONS TO DISMISS

Plaintiff asserts jurisdiction under 42 U.S.C. § 405(g)[2] as to the federal defendant. (Filing 1 ¶¶ 2 & 3; Mem. Supp. Pl.'s Resistance Defs.' Mots. Dismiss, at nn. 5 & 6.) Plaintiff brings a 42 U.S.C. § 1983 claim against the state defendant, claiming federal question jurisdiction under 28 U.S.C. § 1331[3] "and/or" 42 U.S.C. § 405(g). (Mem. Supp. Pl.'s Resistance Defs.' Mots. Dismiss, at n. 8.)

The federal defendant has moved (filing 15) to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), arguing that jurisdiction over the federal defendant cannot be based on 42 U.S.C. § 405(g) because Plaintiff has failed to complete the administrative process required by that statute.[4] The state defen-

**2.** Section 405(g) provides in relevant part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. 42 U.S.C. § 405(g) (Cum.Supp.1998).

**3.** Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**4.** In his motion to dismiss, the federal defendant also argues that 28 U.S.C. § 1331 cannot be used as a basis for jurisdiction over him; that 42

dant has also filed a motion to dismiss (filing 17), claiming that the Social Security Act does not waive the State of Nebraska's sovereign immunity against suit and that Plaintiff's section 1983 claim must be dismissed for failure to state a claim upon which relief may be granted. I shall address each motion in turn.

### A. Motion to Dismiss of Federal Defendant

As stated above, Plaintiff asserts jurisdiction over the federal defendant pursuant to 42 U.S.C. § 405(g). Section 405(g) establishes two jurisdictional prerequisites to review of claims arising under the Social Security Act: presentation and exhaustion.

#### 1. Presentation

■ The first prerequisite is not waivable and requires presentation of a claim to the Commissioner of Social Security via an application for benefits. *Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (class action against Secretary of Health and Human Services challenging internal policy affecting disability determinations); *Titus v. Sullivan,* 4 F.3d 590, 592 (8th Cir.1993) (class action against Secretary of Health and Human Services challenging use of certain policies and procedures in determining eligibility for disability benefits); *Schoolcraft v. Sullivan,* 971 F.2d 81, 84–85 (8th Cir.1992) (class action against Secretary of Health and Human Services and directors of state disability determination agency challenging procedures and standards used in determining disability for claims involving chronic alcoholism or other drug dependency), *cert. denied sub nom., Shalala v. Schoolcraft,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *Mental Health Ass'n of Minnesota v. Heckler,* 720 F.2d 965, 969 (8th Cir.1983) (examining jurisdiction under 42 U.S.C. § 405(g) over claim against Secretary

of Health and Human Services challenging procedure used by Secretary in disability determinations of the severely mentally ill, holding that court properly asserted jurisdiction over Secretary under section 405(g)).

■ Plaintiff's complaint alleges that she has applied for, and been denied, Supplemental Security Income benefits by the Nebraska Disability Determination Services Bureau (DDS). (Filing 1 ¶ 4.) The declaration of a Social Security Administration employee submitted in support of the federal defendant's motion to dismiss on Rule 12(b)(1) grounds confirms that Plaintiff applied for Supplemental Security Income benefits on July 31, 1997; that DDS made an initial determination that Plaintiff was not disabled on October 1, 1997; and that Plaintiff requested reconsideration of that determination from the Social Security Administration on November 5, 1997. (Filing 16, Decl. of Teresa Blair.) Thus, Plaintiff meets the first jurisdictional prerequisite to review of her claim against the federal defendant under the Social Security Act.[5]

#### 2. Exhaustion

■ The second jurisdictional prerequisite to review of claims arising under the Social Security Act pursuant to section 405(g) is exhaustion of administrative remedies, a requirement which can be waived by either the Commissioner of Social Security or the courts. *Bowen,* 476 U.S. at 482–86, 106 S.Ct. 2022 (holding district court did not err in waiving exhaustion for claimants whose time to pursue further administrative appeals had lapsed or for claimants who still had time to seek administrative remedies); *Titus,* 4 F.3d at 592 (holding that complaint sufficiently alleged facts to warrant waiver of administrative remedies under section 405(g) and therefore subject matter jurisdiction existed);

U.S.C. § 421(a)(2) does not give Plaintiff a private cause of action against the federal defendant; and that Plaintiff fails to state a section 1983 claim against the federal defendant. However, such arguments are irrelevant in light of Plaintiff's admissions that she is not relying on 28 U.S.C. § 1331 for jurisdiction over the federal defendant; that she is not relying on 42 U.S.C. § 421(a)(2) as a basis for jurisdiction or as a cause of action against the federal defendant;

and that Plaintiff's section 1983 claim is asserted against the state defendant only. (Mem.Supp. Pl.'s Resistance Defs.' Mots. Dismiss, at nn. 5 & 6.)

**5.** Further, because the proposed class consists of individuals who have been denied Social Security benefits, the class members would satisfy the "presentation" requirement.

*Schoolcraft,* 971 F.2d at 85 (finding error in district court's decision to prevent lawsuit against Secretary from proceeding due to failure to exhaust administrative remedies under section 405(g)); *Mental Health Ass'n of Minnesota,* 720 F.2d at 969 (holding judicial waiver of exhaustion requirement under section 405(g) appropriate). Exhaustion means proceeding through all stages of the administrative appeals process such that the claimant receives a "final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g).

█ Here, Plaintiff does not allege or argue that she has exhausted her administrative remedies under the Social Security Act; rather, she argues that the exhaustion requirements should be waived. (Mem.Supp. Pls.' Resistance Defs.' Mots. Dismiss at 7–17.) In order to warrant waiver of administrative remedies under 42 U.S.C. § 405(g) such that subject matter jurisdiction exists over the plaintiff's claim against the Commissioner of Social Security, Plaintiff must show that (1) her claim is collateral to her claim for disability benefits; (2) irreparable injury will follow; and (3) exhaustion would otherwise be futile. *Titus,* 4 F.3d at 592 (citing *Bowen,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462); *Schoolcraft,* 971 F.2d at 85 (citing *Bowen* ).

█ With regard to the first prong of the waiver inquiry, Plaintiff and the purported class have sufficiently alleged that their claim is collateral to their claim for disability benefits because Plaintiff and the class do not seek benefits in this court; rather, they challenge "the very procedure by which their claims were processed." *Schoolcraft,* 971 F.2d at 86 (citing *Bowen* 476 U .S. at 484–85, 106 S.Ct. 2022). However, Plaintiff and her proposed class have failed to make any allegations as to the second and third prerequisites to waiver of administrative remedies under 42 U.S.C. § 405(g). The complaint is devoid of any allegations indicating that irreparable injury will follow if such waiver is

not judicially granted, and that administrative exhaustion would otherwise be futile.[6]

Because allowing amendment of the complaint only to make allegations with regard to the second and third prongs of the waiver-of-exhaustion factors would not alter the claims originally asserted such that Defendants would be significantly prejudiced, I shall deny the federal defendant's motion to dismiss and allow Plaintiff to amend her complaint accordingly. Fed.R.Civ.P. 15(a) (leave to amend pleadings should be "freely given when justice so requires"); *Dale v. Weller,* 956 F.2d 813, 815 (8th Cir.1992) (leave to amend to be liberally granted unless other parties would be prejudiced); *Sanders v. Clemco Indus.,* 823 F.2d 214, 217 (8th Cir. 1987) (error to deny leave to amend complaint when no significant prejudice shown). Providing Plaintiff properly amends her complaint, this court has jurisdiction to review the plaintiff's claim against the federal defendant pursuant to 42 U.S.C. § 405(g).

### B. Motion to Dismiss of State Defendant

Plaintiff brings a 42 U.S.C. § 1983 claim against the state defendant, claiming federal question jurisdiction under 28 U.S.C. § 1331. The state defendant moves to dismiss this 1983 claim on the grounds that the Social Security Act does not waive the State of Nebraska's sovereign immunity against suit, the state defendant is not a "person" acting under color of state law within the meaning of section 1983, and the portion of the Social Security Act relevant here forecloses a section 1983 remedy. Thus, the state defendant's challenge to the Plaintiff's 1983 action requires analyzing (1) whether the Eleventh Amendment bars Plaintiff's suit against the state defendant; (2) whether the state defendant acts under color of state law in making disability determinations for the Social Security Administration; (3) whether the state defendant is a "person" within the meaning of section 1983; (4) whether the Social Security Act, as is relevant here, creates "rights" enforceable through section 1983; and (5)

---

6. I note that other courts have found the second and third prongs of the waiver inquiry easily satisfied in similar cases, especially when "the Government seeks to require claimants to exhaust administrative remedies merely to enable [the claimants] to receive the procedure they should have been afforded in the first place," *Bowen,* 476 U.S. at 484, 106 S.Ct. 2022, and where exhaustion in an individual case will not result in a challenge to, or correction of, systemic errors in other stages of the administrative process. *Schoolcraft,* 971 F.2d at 87.

whether the remedial scheme set forth in the Social Security Act evidences congressional intent to foreclose a section 1983 remedy.

### 1. Eleventh Amendment Immunity

■ The state defendant asserts that because a suit against a state official in his official capacity is in effect a suit against the State of Nebraska, and because the Social Security Act does not waive the State of Nebraska's sovereign immunity, the Eleventh Amendment bars Plaintiff's claims against the state defendant.

I agree that to the extent the state defendant is sued in his official capacity for money damages, the Eleventh Amendment to the United States Constitution[7] applies and, therefore, bars recovery against the state defendant in his official capacity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

> "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."

*Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

■ However, the Eleventh Amendment does not bar a federal lawsuit which seeks to prospectively restrain a state official from acting in violation of the Constitution or federal law because such relief would simply prohibit the state official from doing that which he has no legal right to do. *Ex parte Young*, 209 U.S. 123, 159, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (Eleventh Amendment did

not prohibit injunction against Attorney General of Minnesota to conform future conduct of his office to the Fourteenth Amendment). *See also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, ——, 117 S.Ct. 2028, 2040, 138 L.Ed.2d 438 (1997) ("An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction" unless the suit implicates special sovereignty interests, as in this case which was the functional equivalent of a quiet title action involving navigable waters); *Edelman*, 415 U.S. at 664, 94 S.Ct. 1347 (judgment enjoining state and county officials from failing to process benefit applications for federal-state aid within time limits set by federal regulation deemed analogous to prospective relief awarded in *Ex parte Young*); *Campbell v. Arkansas Dep't of Correction*, 1998 WL 544908, at *12 (8th Cir. Aug.28, 1998) (director and assistant director of state agency could be sued in official capacities under section 1983 for prospective, injunctive relief). The United States Supreme Court has reiterated, however, that the *Ex parte Young* doctrine is narrow, applies only to prospective relief, and "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

As discussed above, Plaintiff's prayer for relief requests a declaratory judgment that the defendants' standards, policies, and procedures in determining eligibility for Social Security Disability Insurance and Supplemental Security Income benefits—and the oversight of such eligibility determinations—violate federal statutes, regulations, and Eighth Circuit case law; a permanent injunction prohibiting the defendants from using the disputed standards, policies, and procedures in making Social Security disability determinations; an order requiring the de-

---

**7.** The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI. While the Eleventh Amendment's express language does not bar

suits against a state by its own citizens, the United States Supreme Court has consistently held that unconsenting states are immune from suits brought in federal court by the states' own citizens, as well as from suits brought by citizens of other states. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

fendants to perform disability redeterminations for all class members using the correct disability determination standards; and an order requiring the defendants to allow "the monitoring" of future disability determinations and to report to the court on the results of that monitoring.

None of these requests seek retroactive monetary relief against the state; instead, the complaint prays for an injunction that would govern the state defendant's future conduct. While a court order requiring the state defendant to perform disability redeterminations may ultimately result in monetary awards to the claimants, such a court order would simply require the state defendant to reanalyze past disability claims using the proper standards, not to make retroactive payments of wrongfully withheld benefits. *Edelman,* 415 U.S. at 678, 94 S.Ct. 1347 (Eleventh Amendment barred only portion of decree which ordered state's retroactive payment of public aid; parties conceded that under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment did not bar part of judgment that prospectively enjoined state and county officials from failing to process aid applications within time limits set by federal regulation). However, to the extent Plaintiff's prayer for relief seeks a judgment against the state defendant declaring that he violated federal law in the past, the Eleventh Amendment does bar such relief. *Puerto Rico Aqueduct,* 506 U.S. at 146, 113 S.Ct. 684.

Thus, the requests for relief in this case—to the extent they do not seek retroactive money damages from the state and to the extent they do not request a declaration that the state defendant violated federal law in the past—are not barred by the Eleventh Amendment under *Ex parte Young.* To the extent Plaintiff seeks retroactive money damages from the state defendant and to the extent Plaintiff requests a declaration that the state defendant violated federal law in the past, the state defendant's motion to dismiss on Eleventh Amendment grounds must be granted.

### 2. *Color of State Law Under § 1983*

■ Section 1983 states in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (Cum.Supp.1998). The state defendant argues that it does not act under color of state law when it makes disability determinations for the Social Security Administration. I disagree.

In the context of deciding whether 42 U.S.C. § 405(h)[8] barred federal question jurisdiction against the directors of the state disability determination service ("DDS") in a case similar to this one, the *Schoolcraft* court stated that "[a]lthough DDS is responsible for carrying out the Secretary's regulations and policies, it operates pursuant to state statutory authority." *Schoolcraft,* 971 F.2d at 88. Concluding that the directors of the state disability determination service were not officers or employees of the federal government, the court specifically disagreed with the holding of the Second Circuit Court of Appeals in *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981),[9] that similar state defendants were

8. The provision considered by the court read: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331 et seq.] to recover on any claim arising under [Title II of the Social Security Act]." 42 U.S.C. § 405(h) (1988).

9. *Ellis v. Blum,* 643 F.2d 68, 83 n. 17 (2d Cir. 1981), held that a section 1983 remedy was unavailable against state officials who made initial disability determinations for the Social Security Administration because such state officials were

not acting under color of state law for section 1983 purposes. The court stated:

Title II of the Social Security Act contrasts with other benefits programs in that the funds are entirely of federal origin and the state agencies function solely as agents of the Secretary in making determinations of disability, applying federal law and federal regulations in accordance with procedures prescribed by her. Even accepting as true plaintiff's allegation that the state defendants have made a practice and policy of issuing deficient pretermination notices in vio-

acting solely as agents of the United States. Further, the court held that the plaintiffs' challenge to the procedures and standards applied by the state DDS to certain disability claims was sufficient to establish federal question jurisdiction, as the plaintiffs adequately alleged that "state officers in their official capacities, acting under color of state law, violated federal law and the United States Constitution by failing to apply the proper criteria."

Similarly, the court in *Laird v. Ramirez*, 884 F.Supp. 1265, 1282 (N.D.Iowa 1995), opined that the Iowa Disability Determination Services Bureau acted under the color of state law within the meaning of section 1983 because the Bureau was a division of the Iowa Department of Education, which is established by state statute, and because the Bureau exerted the authority of the state in making initial disability determinations under the Social Security Act. *See also Sorenson v. Concannon*, 893 F.Supp. 1469, 1483–84 (D.Or.1994) (state disability determination service that made disability determinations on behalf of the federal government was formed by a state agency that was created and empowered by state statute; holding that such state defendants acted under color of state law for 1983 purposes).

As in the above cases, the Nebraska Disability Determination Services Bureau operates pursuant to state statutory authority in carrying out the Social Security Administration's regulations and policies. Neb.Rev.Stat. § 79–11,130 (Michie 1997) provides:

> The State Board of Education is empowered to enter into an agreement on behalf of the State of Nebraska with the Secretary of the United States Department of Health and Human Services to carry out the provisions of the federal Social Security Act, as amended, relating to the making

of determinations of disability under the provisions of such act.

The State Board of Education was created by article VII, §§ 2–4, of the Nebraska Constitution, which dictates that the state legislature shall prescribe the duties of the Board. The Nebraska Legislature has done so. Neb.Rev.Stat. §§ 79–301(2) & 79–310 to 79–321 (Michie 1997).

Thus, while the state defendant may carry out provisions of federal law in making disability determinations for the Social Security Administration, it receives its authority and continuing ability to act pursuant to state law. Thus, I conclude that the state defendant acts under color of state law for purposes of Plaintiff's 1983 claim against the state defendant.

### 3. *"Person" Under § 1983*

■ The state defendant argues that because a suit against a state official in his official capacity is in effect a suit against the state, the state defendant is not a "person" under section 1983. For the same reasons Eleventh Amendment immunity does not apply to Plaintiff's request for prospective injunctive relief against the state defendant, discussed above, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). *See also Laird v. Ramirez*, 884 F.Supp. 1265, 1282 (N.D.Iowa 1995) (citing *Will* and concluding that director of state disability determination service was "person" under section 1983 when suit sought injunctive and declaratory relief to compel state disability determination ser-

---

lation of federal law, the authority under which this is done is nonetheless federal. The mere fact that the federal agents happen to be state officials does not, without more, convert every intentional deviation from the federal path into an action taken under color of state law. See *Askew v. Bloemker*, 548 F.2d 673, 676–77 (7th Cir.1976).
*See also Crayton v. Shalala*, 1995 WL 605599, *6 (N.D.Ala. May 3, 1995) (agreeing with *Ellis* and

holding that federal district court had no jurisdiction over 1983 due process claims against state defendants because state defendants acted under color of federal, not state, law when processing Social Security disability claims), *aff'd as modified sub nom., Crayton v. Callahan*, 120 F.3d 1217 (11th Cir.1997) (modifying district court's judgment to order dismissal without prejudice so plaintiffs could pursue administrative remedies and return to federal court if appropriate).

vice to evaluate disability claims according to proper standards and procedures).

Thus, to the extent Plaintiff seeks prospective injunctive relief against the state defendant, such defendant is a "person" for purposes of Plaintiff's section 1983 claim.

### 4. "Rights" Enforceable Under 1983

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that 42 U.S.C. § 1983 may be used to challenge purely statutory violations of federal law, as well as violations of constitutional law. Specifically, the Court held that the phrase "and laws," as used in section 1983, "undoubtedly embrace[d]" the plaintiffs' claim that the State of Maine and its Commissioner of Human Services violated the Social Security Act by depriving them of welfare benefits to which they were entitled. *Id.* at 4, 100 S.Ct. 2502. Subsequently, the Court has recognized that section 1983 may not be used to challenge violations of federal statutes when (1) the federal statute does not create enforceable rights, privileges, or immunities within the meaning of section 1983 on behalf of the Act's beneficiaries or (2) Congress has foreclosed section 1983 enforcement of the statute in the statute itself. *Suter v. Artist M.,* 503 U.S. 347, 355–56, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (issue was whether private individuals had right to enforce a provision of the Adoption Assistance and Child Welfare Act of 1980 under the Act itself or via section 1983) (citing *Wright v. City of Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)).

■ In determining whether a statutory provision gives rise to a federal right enforceable through section 1983—the first factor above—the court must consider:

> (a) whether the statutory provision in question was intended to benefit the plaintiff; (b) whether the statute creates a binding obligation on the state government as opposed to merely expressing a congressional preference; and (c) whether the interest asserted by the plaintiff is sufficiently specific and definite as to be within the competence of the judiciary to enforce.

*Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 523 (8th Cir.1993) (citing *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)).

■ This lawsuit challenges, in part, the state defendant's standards, policies, and procedures used in determining eligibility for Social Security Disability Insurance and Supplemental Security Income benefits. Section 423 of Title 42 of the United States Code provides that "[e]very individual" who meets various criteria "shall be entitled to a disability insurance benefit" for a certain time period. 42 U.S.C. § 423(a)(1) (Cum.Supp.1998). Section 421 of the same title provides that state agencies that make disability determinations "shall" make such disability determinations "in accordance with the pertinent provisions of this subchapter and the standards and criteria contained in regulations or other written guidelines of the Commissioner of Social Security pertaining to matters such as disability determinations. . . ." 42 U.S.C. § 421(1) & (2) (Cum.Supp.1998).

According to the complaint, Plaintiff and the prospective class members are individuals who have been denied Social Security benefits as a result of unlawful policies, practices, and procedures used by the state defendant in making disability determinations. The above-quoted statutory provisions *require* (through use of the word "shall") (1) the awarding of benefits in favor of those who are found to be disabled and (2) adherence to the Commissioner's regulations and guidelines by state entities that make disability determinations. Thus, these statutory provisions appear to create a binding obligation, as opposed to a mere congressional preference, on state disability determination entities to award benefits to applicants such as Plaintiff and her prospective class members according to certain standards that are being challenged in this lawsuit—a lawsuit that asserts interests "sufficiently specific and definite as to be within the competence of the judiciary to enforce." *Arkansas Medical Soc'y,* 6 F.3d at 523 (citing *Golden State Transit,* 493 U.S. at 106, 110 S.Ct. 444).

Therefore, I conclude that the statutory provisions at issue in this case give rise to a

federal right enforceable through section 1983.

### 5. Foreclosure of 1983 as a Remedy

 In determining whether Congress has foreclosed section 1983 enforcement of the relevant statute in the statute itself—the second factor above—the court must consider "whether Congress has provided a comprehensive and carefully tailored remedial scheme within the statute in question, so as to make enforcement under § 1983 inconsistent [with that scheme]." *Arkansas Medical Soc'y,* 6 F.3d. at 523 (citing *Golden State Transit,* 493 U.S. at 106–07, 110 S.Ct. 444). In *Blessing v. Freestone,* 520 U.S. 329, ——, 117 S.Ct. 1353, 1362–63, 137 L.Ed.2d 569 (1997), the Supreme Court considered whether mothers whose children were eligible to receive child support services from the state pursuant to Title IV–D of the Social Security Act could bring a section 1983 action against the director of the state's child support agency. In considering whether Title IV–D contained a remedial scheme comprehensive enough to preclude a remedy under section 1983, the *Blessing* Court emphasized that a federal statutory scheme will not foreclose section 1983 liability simply because the scheme provides " 'administrative mechanisms to protect the plaintiff's interests' " or because the Secretary of Health and Human Services exercises oversight powers. *Id.,* 520 U.S. at ——, 117 S.Ct. at 1363 (quoting *Golden State Transit,* 493 U.S. at 106, 110 S.Ct. 444). The Court further noted that it had only twice found a federal remedial scheme sufficiently comprehensive to preclude a section 1983 action to enforce the scheme's provisions—in *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

In *National Sea Clammers* the Court focused on the "unusually elaborate enforcement provisions" of the Federal Water Pollution Control Act of 1948 (FWPCA) and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPRSA), both of which conferred "authority to sue [for enforcement of the acts] both on government officials and private citizens." *Id.* at 13, 101 S.Ct. 2615.

The FWPCA, for example, authorized the Environmental Protection Agency Administrator to issue compliance orders and initiate civil suits to respond to violations of the act. In addition, interested persons could seek judicial review of actions taken by the Administrator, and when such review was obtained, the action at issue could not be challenged in any subsequent civil or criminal enforcement proceeding. These mechanisms for enforcement of the acts were further supplemented by citizen-suit provisions which authorized private persons to seek injunctions in order to enforce the acts. Because of the "comprehensive enforcement mechanisms" contained in the FWPCA and the MPRSA, the *National Sea Clammers* Court concluded:

> It is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen-suit provisions.... We therefore conclude that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983.

*National Sea Clammers,* 453 U.S. at 20–21, 101 S.Ct. 2615.

Similarly, the Court in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), held that the "elaborate procedural mechanism[s]" contained in the Education of the Handicapped Act (EHA) dictated that a plaintiff could not circumvent the administrative remedies provided therein by pursuing a section 1983 claim in federal court. The Court noted that the EHA attempted to relieve the financial burden on states and localities that were responsible for educating all handicapped children. The EHA ensured that all hearings conducted at the state level were fair and adequate, and that each child's educational needs were addressed through a process initiated at the local level that included "ongoing parental involvement, detailed procedural safeguards, and a right to judicial review." *Id.* at 1011, 104 S.Ct. 3457. Based on these procedural mechanisms, the Court concluded that Congress intended to make

the EHA the exclusive avenue through which a handicapped child could pursue an equal protection claim; to conclude otherwise would "render superfluous most of the detailed procedural protections" contained in the EHA and would contradict Congress' view that parents and local education agencies were best equipped to develop individualized plans for each child's education. *Id.* at 1011–12, 104 S.Ct. 3457.[10]

In the case pending before me, the portions of the Social Security Act at issue undoubtedly contain a detailed and comprehensive procedure for the determination of "disabled" status and appeals of disability determinations. 42 U.S.C. § 421 (Cum. Supp.1998). However, this remedial scheme, as exhaustive as it is, "provides for review of *individual disability determinations,* but does not provide a mechanism for review of systemic procedures and standards," as are challenged here. *Laird v. Ramirez,* 884 F.Supp. at 1284 (emphasis in original). Because the focus of the comprehensive administrative review process contained in relevant portions of the Social Security Act, *see* 42 U.S.C. § 421, is on individual disability determinations, I cannot conclude that the Act precludes use of section 1983 to challenge faulty systemic procedures and standards allegedly used by the state defendant across the board.

### III. INTERLOCUTORY APPEAL

Because my disposition of the defendants' motions involves controlling questions of law as to which there may be a substantial ground for difference of opinion and an immediate appeal from this order may materially advance the ultimate termination of this litigation, I shall order that the parties submit a brief within 10 days of the date of this order addressing whether I should grant the parties leave to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### IV. CONCLUSION

#### A. The Federal Defendant

Plaintiff has made allegations sufficient to satisfy one of the two jurisdictional prerequisites for review of her claims against the federal defendant under 42 U.S.C. § 405(g): presentation of her claim to the Commissioner of Social Security via an application for benefits. The second requirement, exhaustion, will be waived by the court upon Plaintiff's timely amendment of her complaint to allege that irreparable injury will follow if such waiver is not judicially granted and that administrative exhaustion would otherwise be futile. Providing that Plaintiff properly amends her complaint, this court has jurisdiction to review her claim against the federal defendant pursuant to 42 U.S.C. § 405(g), and the federal defendant's motion to dismiss shall be denied.

#### B. The State Defendant

The state defendant's motion to dismiss must be granted in part and denied in part, as follows: (1) to the extent Plaintiff seeks retroactive money damages from the state defendant and to the extent Plaintiff requests a declaration that the state defendant violated federal law in the past, the state defendant's motion to dismiss on Eleventh Amendment grounds must be granted, but should otherwise be denied; (2) because the state defendant acts under color of state law in making disability determinations for the Social Security Administration and is a "person" within the meaning of section 1983, the state defendant's motion to dismiss on the ground that Plaintiff has failed to state a section 1983 claim must be denied; and (3) because the Social Security Act, as is relevant here, creates "rights" enforceable through section 1983 and does not contain a comprehensive remedial scheme that is intended to foreclose section 1983 actions that make systemic challenges to the Social Security disability determination process, the state defendant's motion to dismiss on this basis must be denied as well.

---

**10.** In response to *Smith,* "Congress amended the [EHA] in 1986 to state specifically that the EHA is not the exclusive avenue through which parents may enforce the rights of their handicapped children. *See* The Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372 § 3, 100 Stat. 796 (1986). . . . ." *Digre v. Roseville Schools Indep. Dist. No. 623,* 841 F.2d 245, 249 (8th Cir.1988).

IT IS ORDERED:

1. The federal defendant's motion to dismiss (filing 15) is conditionally denied, providing that Plaintiff amends her complaint within 10 days of the date of this order only to allege that (a) irreparable injury will follow if she and her purported class members are required to exhaust their administrative remedies under 42 U.S.C. § 405(g) and (b) exhaustion would otherwise be futile. In the absence of such a timely amendment, the federal defendant's motion to dismiss may be granted.

2. To the extent Plaintiff seeks retroactive money damages from the state defendant and to the extent Plaintiff requests a declaration that the state defendant violated federal law in the past, the state defendant's motion to dismiss (filing 17) is granted, but is otherwise denied.

3. The parties shall submit a brief within 10 days of the date of this order addressing whether I should grant the parties leave to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

4. Following Plaintiff's submission of an amended complaint and disposition of the interlocutory appeal question, Plaintiff's request for class certification pursuant to Fed. R.Civ.P. 23 shall be referred to Magistrate Judge Piester for ruling.